### TOWNSEND v. THE STATE.

2b    151
f169   396

The fine, on a conviction of retailing spirituous liquors without a licence, belongs to the county for the purposes of education; but this circumstance need not be stated in the judgment.

A judgment against a defendant, in a criminal cause, will not be reversed because the record does not show that the indictment was endorsed, "a true bill," by the foreman of the grand jury.

A licence, to retail spirituous liquors for three months, was granted by the board of county justices. The licence, as appeared on its face, had been granted on the payment of *fifty cents. Held*, that, under the statute, no licence to keep a tavern or to retail spirituous liquors, could be granted on the payment of a less sum than *five dollars;* and that, therefore, the licence in this case was, *prima facie,* absolutely void.

The jury are the judges of the facts, both in civil and criminal cases; but they are not, in either, the judges of the law. They are bound to find the law as it is propounded to them by the Court. They may, indeed, find a general verdict, including both

May Term,
1828.

TOWNSEND
v.
THE STATE.

Friday,
May 9.

the law and the facts; but if, in such verdict, they find the law contrary to the instructions of the Court, they thereby violate their oath.

Whether evidence be competent or not, is always a question for the decision of the Court.

ERROR to the *Morgan* Circuit Court.

HOLMAN, J.—Indictment for retailing spirituous liquors without licence. Plea, not guilty. On the trial, the defendant presented the following licence, to wit: "State of *Indiana, Morgan* county, *January* term, 1827. Ordered by the board of county justices, that *Silas Townsend* be and he is hereby authorised to retail spirituous liquors, in *Morgan* county, for three months from the first day of *January*, 1827; the said *Silas Townsend* having paid the sum of fifty cents to the treasurer for the said term. Witness, *George H. Buler*, clk." Which licence, it is said, covered the time when the retailing of the spirituous liquors, charged in the indictment, was proved to have taken place. The counsel for the state objected to the admission of this licence as evidence to the jury, and the Circuit Court sustained the objection and rejected the licence; to which opinion of the Court the defendant excepted. The defendant moved the Court to instruct the jury, that they were the judges of the law and the fact in this case; and that the power of Courts in criminal cases is only advisory; which instructions the Court refused to give; but instructed the jury that it was their province, in criminal cases, to determine whether the facts, proved by the evidence, constitute an offence under the law, as it is propounded to them by the Court. The jury found the defendant guilty, and assessed his fine at two dollars; and the Court gave judgment, that the state of *Indiana* recover against the said defendant the sum of two dollars, by the jurors assessed, together with her costs.

It is here contended, that this judgment is erroneous, because it does not state that the fine is for the use of the county seminary of *Morgan* county. That this fine when collected belongs to the county, for the purposes of education, is not disputed; but the question is, whether it is material that this appropriation of it should appear in the judgment. The appropriation may or may not appear in the judgment, without affecting the right of the county; and, in the present form of the judg-

ment, the right of the county is complete, without any additional appropriation.

Another point that presents but little difficulty may here be disposed of; that is, that this judgment is erroneous, because the record does not show that the indictment was endorsed, "a true bill," by the foreman of the grand jury. Had this objection been made in the Circuit Court, so that we should have known that the indictment had not this necessary endorsement, it would have become a material point in the case; but, presented as it is for the first time in this Court, it loses its importance, inasmuch as a complete record, conclusive as to every material fact in the case, may be made up without it.

A question, of some importance and difficulty, is presented by the refusal of the Circuit Court, to admit the defendant's licence to be read as evidence to the jury. The act to license and regulate taverns, approved the 20th of *January*, 1824, R. C. 1824, p. 406, provides, in the first section, that the county commissioners (whose powers the board of county justices now possesses) are authorised to license, as retailers of spirituous liquors, any persons who apply therefor; but shall not grant such licence, unless the person applying shall produce the certificate of twelve householders, that he is of good moral character, and that it would be for the benefit of travellers if he was so licensed; nor unless he shall give bond to keep good order in his house. The second section requires, that the person so licensed shall constantly keep the bedding, stabling, and other *accommodations, necessary* for the convenience of travellers. In the third section it is enacted, that no person shall obtain licence, as a retailer of spirituous liquors, until he shall pay to the county treasurer the amount required by law for such licence; nor shall any licence continue for more than one year. By an amendatory act, approved the 12th of *February*, 1825, it is enacted, that when any person shall make application, under the provisions of the act to which this is an amendment, for a licence to keep a tavern, he shall produce a certificate of twenty-four householders, &c. The act then proceeds to make some further additional regulations, as to the house, stable, bedding, &c. that he shall possess. Stat. 1825, p. 99. The act respecting the revenue, approved the 30th of *January*, 1824, R. C. 1824, p. 339, provides, that the amount required for a li-

cence, to retail spirituous liquors, shall not be less than five, nor more than twenty-five dollars.   It was under these acts of assembly that this licence was granted.

From the whole phraseology of these two acts regulating taverns, it would seem that the legislature considered, that a licence to retail spirituous liquors, and a licence to keep a tavern, mean the same thing.   Without this construction of their language, there would be some confusion on the subject; but with this construction the whole subject is plain.   The same pre-requisites are required of him who would obtain a licence to retail spirituous liquors, as of him who would obtain a licence to keep a tavern; and a licence to retail spirituous liquors, is a licence to keep a tavern, and so *vice versa;* and it must be in this light that, we consider, the licence to retail spirituous liquors was presented as a defence in this case.   When we consider the nature of the act for which this licence is required, we shall find it necessary to give the legislative provisions on the subject a strict construction.   It has long been seen, that the practice of retailing spirituous liquors is productive of serious evils to the community; it has therefore long been a subject of legislative interference.   The general assembly has, from time to time, adopted measures to repress this growing evil, and to confine it in as narrow bounds as seemed to be consistent with the real or imaginary rights of individuals. Therefore, every pre-requisite for the granting of a licence for this purpose, should be strictly and rigidly required.   If we consider such a licence in regard to the effect it has upon the accommodation of travellers, we shall find reasons for the same strictness of construction.   One of the pre-requisites to the granting of such a licence, to wit, the payment of the sum required by law, has another reason why it should be strictly construed, because it is in aid of the public revenue of the county.

What then is the effect of a licence granted without these pre-requisites?   How is it to be known, whether these pre-requisites have been complied with or not?   What tribunal has authority to inquire into the proceedings of the board of justices on this subject?   These questions are of importance; but they are in some measure solved, by considering that the justices acted ministerially, and not judicially in this matter.   The

only questions that can arise, are on plain matters of fact relative to the performance of the pre-requisites.    Whosoever performs the pre-requisites is entitled to the licence; and there is no case where the pre-requisites, or any of them, can be dispensed with.    There is no room for discretion, except in the amount at which the licence shall be granted, and then the range of discretion is only between five, and twenty-five dollars. If the act of granting a licence is in its nature a ministerial act, every tribunal, and every individual who is affected by it, may examine into the grounds on which it has been granted; and if it is found that it was granted contrary to law, it may be treated as absolutely void.    If it were otherwise, it would place the justices, in this matter, superior to the law; and the acts of assembly to them would only be directory, and could not be rendered imperative, as there is no appeal from their order. There is no ground on which to consider this act of theirs as only voidable, and therefore good until it is set aside, as there is no provision made for reviewing it.    It must therefore be absolutely void, or unquestionably valid; and surely the legislature never intended to sanction the idea, that the justices might do just as they pleased in granting tavern licences; and that no one should question the validity of their acts.    It is a general rule in *England*, to admit a person to show that he is not within the scope of the bankrupt laws, although the authorised commissioners have declared him a bankrupt.    1 Stark. Ev. 253.    In *Crepps* v. *Durden*, Cowp. 640, it was held to be a sufficient answer, in an action of trespass, to a conviction for carrying on a trade, that the justices had no jurisdiction.    The same rule holds as to an order of removal by the justices.    1 Stark. Ev. 253.    We, therefore, unhesitatingly decide, that a licence granted without the statutory pre-requisites is absolutely void; and that any tribunal that has to act upon it, may declare it so.

It is unnecessary to inquire how it is to be known, whether these pre-requisites have been complied with or not; for in this case the licence shows on its face, at least presents strong unrebutted evidence of the fact, that it was granted without the payment of the sum required by law.    It is granted for the sum of fifty cents, when five dollars is the lowest sum for such a licence.    This licence, it is true, is for but three months; but

the revenue law has made no division of time, in fixing the amount to be paid for such a licence. It cannot be granted for more than one year, but there is nothing to prohibit the granting of it for a shorter time; but the law is imperative, without any regard to time, that it shall not be granted for a less sum than five dollars. If, in this case, the holder of the licence actually paid the full amount required by law, it lay upon him to show it, as the licence presented by him was, at least, *prima facie* evidence to the contrary. In granting this licence, for the sum of fifty cents, the board of justices have undertaken to exercise their discretion, where no discretionary powers were given by the legislature; the licence was therefore granted without authority. The defendant himself has shown that he was not entitled to it; and he cannot screen himself from the penalty of the law, under a licence which, he must be presumed to have known, was granted to him in violation of the law. This licence being out of the pale of the law, is of no more force than if granted by a private individual. It was therefore within the province of the Circuit Court, on inspection, to know, and to determine, that it was granted without authority, and constituted no defence to the indictment. That Court properly excluded it from the jury.

The direction of the Circuit Court to the jury, that it was not the province of the jury to determine the law, is assigned for error with some degree of confidence. As this presents a question that has been frequently agitated in this state, we have devoted considerable time to its examination. It would seem that the counsel who moved for this direction of the Court, supposed that the jury possessed more extensive powers in criminal than in civil cases, and therefore treat this as a criminal case, in order to secure to the defendant the full extent of a discretionary power in the jury. Although misdemeanours of this kind are sometimes, in general terms, classed among criminal cases; yet, in every material feature, they are more nearly assimilated to civil cases than to criminal; but we have been able to find no material distinction between civil and criminal cases, as it regards the province of the jury. The powers and the duties of juries are the same, except where, under peculiar circumstances, their powers are enlarged and extended. It has been frequently contended, that the jury have a right to deter-

mine the law as well as the fact; but we have never met with a single principle of law that supports the position; nor a single decided case of any respectability, that sanctions such a principle. In this case, the 10th sec. of the 1st art. of the constitution, is urged as supporting the position. That section provides, that in indictments for libels, the jury shall have a right to determine the law and the facts, under the direction of the Court, as in other cases. This provision in the constitution seems utterly to defeat the purposes for which it was introduced; and to present a conclusive argument against the existence of a general right in the jury to determine the law in all cases. Admitting that it gives the right contended for, in the case of libels, does it give that right in any other cases? And if that right previously existed in all cases, why make this provision in the case of libels? The adoption of this provision, by the framers of the constitution, is therefore the expression of an opinion that no such general right existed; and the adoption of it in cases of libels only, is conclusive that they did not intend to extend it to any other cases. The expression of the one excludes the others. So that, if this question depended solely upon this part of the constitution, it would be decisive against the general right of juries to determine questions of law. Previously to the formation of our constitution, there had been a violent struggle in *England*, between the subjects and the crown, on the doctrine of libels; in which the oppressive power of the crown, enforced by the Courts of justice, rendered it a matter of high importance, that in state prosecutions for libels, the jury should determine the law as well as the facts. This was seen and known by the framers of our constitution, and this provision may have been made to prevent the occurrence of such a state of things in this state. But it was not thought necessary to extend this right of juries to any other cases. So that all other cases are left as they were before. We shall therefore examine into the general province of juries, as to questions of law, leaving the case of libels where they are placed by the constitution.

The maxim, *ad quæstionem juris non respondent juratores*, seems to be as old as the common law. See Co. Litt. 155, 156.— Foster's Crown Law, 255, 256. It had the same origin with the maxim, *ad quæstionem facti non respondent judices.* These

two maxims divide and designate the powers of Courts and juries.   To Courts are assigned all questions of law; to juries all questions of fact.   This distinction, in the powers of the two tribunals, runs through all the books and cases on the subject. In no case can the Court decide upon an issue in fact, unless by express statutory provision; nor can the jury in any case determine an issue of law.   The Court must take the facts to be, as found by the jury; and the jury must yield to the law as delivered by the Court.   It is true, that the Court has the power to set aside a verdict found contrary to the facts established by the evidence, but it cannot determine the facts to be different, but must submit the case to another jury; and the jury, if they are unwilling to sanction the law as delivered by the Court, may find the facts specially, and leave to the Court the responsibility of determining the law.   This distinction, between the province of the Court and of the jury, runs through the whole system of our jurisprudence.   When an issue in law is formed, the jury have nothing to do with it.   When any matter of law is pleaded, it concludes to the Court, and not to the country or jury.   Whenever the facts in a case are admitted, a jury is unnecessary; unless it is to find the consequences of the facts, as in cases of damages, which depend almost exclusively upon facts.   Juries are generally sworn to try issues, or inquire of damages; and their oaths require them to give their verdict according to evidence; and as evidence proper for a jury, applies exclusively to facts, and never applies to the law, the oaths of the jurors necessarily limit them to the finding of facts.

If juries were authorised to determine matters of law, their rules of decision, and consequently the rights of individuals, would necessarily be uncertain and fluctuating.   They neither have, nor are presumed to have, a competent knowledge to decide according to any settled principles; and being so frequently succeeded by each other, it would be impossible, in any future time, to establish any permanent rules of decision.   If the Court decide contrary to law, the decision may be corrected in an appellate tribunal, and no matter how often an erroneous decision may be made in the same case, it can be as often set right by a reversal of the judgment.   If the jury may decide the law, the Court, it is true, may set aside the verdict; but as

only two new trials can be granted to the same party, if three successive juries concur in an erroneous verdict, the evil is without a remedy. The most important controversies might thus be determined, contrary to the plainest principles of law, without a possibility of redress. Thus, the rights of individuals might be destroyed, by the decision of men who were never presumed to know the law; and that, too, in the presence of a competent tribunal, fully aware of the injustice that was done, but without the power to prevent it. If the jury have a right to find a verdict contrary to the direction of the Court, it would not only render the rules of decision uncertain, and the rights of individuals precarious, but it would also prostrate the dignity of the Court; and would ultimately effect a material change, if not the destruction, of this branch of the government. But the organization of our Courts, the system of pleading, and the rules of admitting evidence, all go to show that the jury do not possess this right.

The misapprehension of the province of the jury, as to questions of law, has principally arisen from the fact that they may find a general verdict; which involves the law with the facts; and, in finding such a verdict, they may decide the law to be different from what the Court has determined it to be. This they can do, but it is classed by all writers on the subject among their powers of doing wrong. It is a violation of their oaths; and surely the question is not, how illegally a jury may act, but what is the proper sphere of their action. It is the duty of the Court to determine the law, and the presumption is that it determines it correctly: if the jury have a right to find the law to be otherwise, it would necessarily follow, that they have a right to determine the law to be what it is not. Besides, if the jury find the law contrary to the direction of the Court, the Court is bound to set aside the verdict; and it would seem strange, that the jury have a right to do what the Court is bound to undo. The duty of the Court is altogether different in this case, from the case of a verdict contrary to evidence. There the Court exercises a discretion in setting aside a verdict, but here its duty to set aside the verdict is imperative. The limitation of the power of the Court as to granting new trials, after two verdicts for the same party in a civil case, or after a verdict for the defendant in a criminal case, has nothing to do

with the general principle. This limitation was made, in the one case, to put an end to litigation; and, in the other, in favour of life and liberty; and was not intended to enlarge the province of juries. The privilege granted to juries of finding a general verdict, cannot be construed into an authority to find the law contrary to the direction of the Court. This clearly appears from what is said of their liability to punishment, if they find a verdict contrary to law. Sir *William Blackstone*, in treating of the duties of juries in giving their verdict in criminal cases, which, he observes, may be either general or special, says, "they may set forth the facts of the case, and pray the judgment of the Court as to the law, where they doubt the matter of law, and therefore choose to leave it to the determination of the Court; though they have an unquestionable right of determining upon all the circumstances, and finding a general verdict, if they think proper so to hazard a breach of their oaths: and if their verdict be notoriously wrong, they may be punished, and the verdict set aside by attaint." 4 Bl. Comm. 361. Thus it appears to us to be clear, that although the jury has an unquestionable right to find a general verdict, and in that verdict they may, if they choose to violate their oaths, find contrary to law, or contrary to the direction of the Court, yet in so doing they have passed the proper boundary of their duty. This subject was thus viewed by Judge *Addison*. In his charges to grand juries at the close of his Reports, page 62, he remarks, that strictly and properly it belongs only to Courts to decide all questions of law; but whenever in any issue, the law is involved in the fact, the jury may decide both by a general verdict, but the doctrine of attaints, and of new trials, proves that they do this at their peril, and under the control of the Court.

It is laid down by Hawkins, that if it shall plainly appear that the jury are perfectly satisfied of the truth of a fact, and the Court directly tells them, upon the fact so found, the judgment of the law is such, or such, and therefore they ought to give their verdict accordingly, yet they obstinately insist upon a verdict contrary to such direction; it seems agreeable to the general reason of the law, that the jurors are finable by the Court, unless an attaint lies against them; for otherwise they would not be punishable for so palpable a partiality, in taking

upon them to judge of matters of law, with which they have nothing to do, and of which they are presumed to be ignorant, contrary to the express direction of one who by the law is appointed to direct them in such matters, and is to be presumed of ability to do it. 2 Hawks. P. C. 148.—3 Bac. Abr. 783, 784, 785. Lord *Hale*, although he contends against the doctrine of fining jurors, for giving a verdict against the direction of the Court, except in the King's Bench, yet clearly maintains our position, that juries have nothing to do with matters of law, and are not authorised in finding the law contrary to the direction of the Court. 2 Hale's P. C. 160, 161, 311, 313. The cases of *Pennsylvania* v. *Bell*, Addison, 156, and *Pennsylvania* v. *M'-Fall*, id. 255, support the same doctrine. These were both capital cases, and the juries were expressly charged, that it was their province to find the facts only, and that they had nothing to do with questions of law, which were to be determined by the Court. In the first of these cases, the language of Judge *Addison* is peculiarly strong. "The laws," says he, "must operate by certain rules, not the casual feelings of jurors; and jurors must judge of the facts according to the certain rules of law; for miserable would be our situation, if our lives depended not on fixed rules, but on the feelings which might happen to be excited in the jurors who were to try us. I therefore know of no argument less proper, or more dangerous, or to which juries ought to listen with greater suspicion and aversion, than that which must derive its force from confounding the authority of a Court and a jury; instilling into the one a prejudice against the opinion of the other; and persuading jurors that they are at liberty to apply to facts a rule of their own, different from that which the law applies. The Court is the mouth of the law. Whether the facts are so, or so, it lies with you to determine, according as you believe the testimony; leaving it to the Court to pronounce the construction, which the law puts upon the facts so found; but you cannot, but at the peril of a violation of duty, believing the facts, say that they are not what the law declares them to be; for this would be taking upon you to make the law, which is the province of the legislature, or to construe the law, which is the province of the Court." Judge *Addison* has also in his charges to grand juries, pp. 53 to 63, entered at full length upon the constitutional authority of Courts and juries, and has shown by a

21

train of arguments, not only that juries are limited to matters of fact, but also that it is important to the permanency of our civil institutions, that this limitation should be strictly observed.

Thus, from all that we have seen or heard on this question, we are prepared to say without hesitation, that the instruction of the Circuit Court was correct.

But, before we dismiss this case, we will notice another feature in it that is not unworthy of attention, as it is predicated on a supposed right in the jury to determine other questions of law, besides those involved in the facts put in issue. The defendant was indicted for retailing spirituous liquors without licence. It seems, by a bill of exceptions, to be admitted that the fact of retailing spirituous liquors was proved; but he presented a licence in his defence, which was rejected by the Court. Now the only question of law that conjecture · can raise, which the defendant required to be submitted to the jury, must have been whether this licence, so rejected by the Court, was legal evidence and formed a justification for the defendant. If this supposition is correct, and from all that we can discover from the record we have no doubt but that it is, the defendant requests the acknowledgment of a right in the jury, which we presume has never before been contended for: a right to determine, not only the law involved in the facts submitted to them, but to determine questions of law as to the competency and admissibility of evidence, which have been expressly excluded from their consideration by the decision of the Court. If juries were recognized as possessing such a right as this, it would immediately prostrate the power of the Court, and overturn every legal method of arriving at facts, besides destroying the permanency of the principles of law involved in the facts. We cannot but think, that a calm consideration of the consequences of such a course of proceeding, would so alarm its most strenuous advocates as to induce them to abandon it.

BLACKFORD, J.—I cannot agree to a part of the opinion of the Court which has just been delivered. I object to that part of it which states, that the jury have not a right, if they please, to determine the law, as well as the facts proved; and also to that part of it which considers, that, if the jury find a verdict contrary to the instructions of the Court, as to the law applicable to the evidence submitted to them, they thereby violate their oath.

I conceive, that the acknowledged right of the jury to find a general verdict, necessarily includes their right of deciding, if they choose, both the law and the facts with which the cause is connected; and that although the opinion of the Court, on the questions of law applicable to the facts proved, is entitled to great deference and respect from the jury, it is not absolutely *compulsory* upon them. I entirely agree with my brethren, that it is the right and the duty of the Court to grant a new trial, if the verdict be contrary to law; and that the Court has the exclusive right to decide on the competency of evidence.

*Per Curiam.*—The judgment is affirmed with costs. To be certified, &c.

*Wick,* for the plaintiff.
*Whitcomb,* for the state.