Wheeler, G. J.
—“ Thedoctrine of ancient lights is not much relished in this country, owing to the rapid changes and improvements in our cities and villages.” In the case of Parker v. Foote, 19 Wend., 309, the Supreme Court of Hew "Fork held, that “the modern English doctrine of a prescriptive right to prevent obstructions to window-lights, adopted in analogy to the statute of limitations, is an anomaly in the law, and not adapted to the circumstances or existing state of things in this country;” and they refused to recognize it as the common law. ' Mr. Justice Bronson examined the subject in an elaborate opinion, and stated the argument upon which the court arrived at its conclusion with great clearness and force. “ Most of the cases on the subject we have been considering (he said) relate to ways, commons, markets, water-courses, and the like, where the use or enjoyment, if not rightful, has been an immediate and continuing .injury to the person against whom the presumption is macle.” His property has either been invaded, or his beneficial interest in it has been rendered less valuable. The injury has been of such a character that he might liave immediate redress by action. But in the case of windows overlooking the land of another, the injury, if any, is merely ideal or imaginary. ■ The light and air which they admit are not the subjects of property beyond the moment of actual occupancy; and for overlooking one’s privacy no action can be maintained. The party *239 has no remedy but to build on ttie adjoining land opposite the offensive windows. (Chandler v. Thompson, 3 Camp., 80; Cross v. Lewis, 1 Barn. & Cress., 686, per Bayley, J.) Upon what principle the courts in England have applied the same rule of presumption to two classes of cases so essentially different in character, I have been unable to discover. If one commit a daily trespass on the land of another, under a claim of right to pass over, or feed his cattle upon it, or divert the water from his mill, or throw it back on his land or machinery—in these and the like cases, long-continued acquiescence affords strong presumptive evidence of right. But in the case of lights there is no adverse user, nor, indeed, any- use whatever of another’s property; and no foundation is laid for indulging any presumption against the rightful owner.” The learned judge adverts to the acknowledged principle, that a man may build at the extremity of his own land, and that he may lawfully have windows looking out upon the land of his neighbor, and proceeds to say: “The reason why he may lawfully have such windows must be, because he does his neighbor no wrong, and, indeed, so it is adjudged, as we have already seen; and yet, somehow or other, by the exercise of a lawful right in his own land for twenty years, he acquires a beneficial interest in the land of his neighbor. The original proprietor is still seized of the fee, with the privilege of paying taxes and assessments; but the right to build on the land, without which city and village lots are of little or no value, has been destroyed by a lawful window. How, what is the acquiescence which concludes the owner? Ho one has trespassed upon his land, or done him a legal injury of any kind. He has submitted to nothing but the exercise of a lawful right on the part of his neighbor. How, then, has he forfeited the beneficial interest in his property? He has neglected to incur the expense of building a wall twenty or fifty feet high, as the case may be, not for his own benefit, but for the sole purpose of *240 annoying Ms neighbor. That was his only remedy. A wanton act of this kind, although done in one’s own land, is calculated to render a man odious. There is, I think, no principle upon which the modern English doctrine on the subject of lights can be supported. It is an anomaly in the law. It may do well enough in England, but it cannot be applied in the growing cities and' villages of this country, without working the most mischievous consequences.” (19 Wend., 316, 317, 318.) This opinion was approved and the same doctrine reaffirmed by the decision of the Supreme Court of Hew York, in 1851, in the ease of Myers v. Gammell, (10 Barb., 537.)
The Supreme Court of Maine held the same opinion, upon an examination of the subject on principle and authority, in the case of Pierre v. Ferand, 13 Shepl., 436. The court there held this language: “Hothing in law can be more certain, than one’s right to occupy and use his own land as he pleases, if he "does not thereby injure others. He may build upon it, or occupy it as a garden, grass-plot, or passage-way, without any loss or diminution of his rights. Ho person can acquire any right or interest in it, merely on account of the manner in which it has been occupied. When one builds upon his own land, immediately adjoining the land of another person, and puts out windows overlooking that neighbor’s land, he does no more than exercise a legal right. This is admitted. (Cross v. Lewis, 2 B. & C., 686.) By the exercise of a legal right he can make no encroachment upon the rights of his neighbor, and cannot thereby impose any servitude, or acquire any easement, by the exercise of such a right for any length of time.” He does no injury to his neighbor by the enjoyment of the flow of light and air, and does not, therefore, claim or exercise any right adversely to any rights of his neighbor; nor is there anything of similitude between the exercise of such a right and the exercise of rights claimed adversely. It is admitted that his neighbor *241 cannot obtain redress by any legal process; in other words, that his rights have not been encroached upon, and that he has no cause of complaint. And yet, while thus situated, for more than twenty years he loses his right to the free use of his land, because he did not prevent his neighbor from enjoying that which occasioned him no injury, and afforded him no just cause of complaint. The result of the doctrine is, that the owner of land not covered by buildings, but used for any other purpose, may be deprived of the right to build upon it by the lawful acts of the owner of the adjoining land, performed upon his own land, and continued for twenty years. It may safely be affirmed, that the common law contained no such principle. The doctrine, as stated in the more recent decisions, appears to have arisen out of the misapplication in England of the principle, by which rights and easements are acquired' by the adverse claims and enjoyment of them for twenty years, to a case in which no adverse or injurious claim was either made or enjoyed.” (Ib., 440, 441.)
This language is quoted with approval in a note to Qreenleaf’s Treatise on Evidence, (2 Qreenl., § 589a,) and it is there said by the author, “It seems, that to constitute an adverse enjoyment of an incorporeal hereditament, the act of enjoyment must be of such a character as to afford ground for an action by the other party. It must be either a direct invasion of his vested rights, or else consequently injurious to their free exercise. The foundation of prescriptive title is the presumed grant of the party whose rights are adversely affected; but where it appears that the enjoyment has existed by the consent or license of such party, no presumption of grant can be made. Thus, in the case of lights, if the building in which they are made is erected on the party’s own land, and no building stands on the land of the adjoining proprietor, it has been held, that against the latter no right is acquired by the lapse of time.”
*242 These authorities, sustained as they most clearly are by principle, we think sufficient to warrant us in holding, that by the common law, a prescriptive right to prevent the adjacent proprietor from inclosing or building upon his own land cannot be acquired by the use of an adjoining house having windows looking out upon his land, and receiving light and air from that direction, for a period of ten years. If, as has been supposed, a contrary doctrine to that which has been maintained by these authorities would be of mischievous consequences in other States, where; in analogy to their statutes of limitations, a prescriptive title cannot be acquired until the lapse of twenty years, much ■ more must it have such tendency'in this State, where, by the same analogy, the right to an easement may be acquired by an uninterrupted use and enjoyment for the shorter period of ten years. I apprehend, that the principle upon which it has been held such a right may be acquired has never been applied to the case of lights, to give a right within the period and under the circumstances upon which it is asserted in the present case. The occupant of a log-house in a new town, which had been founded but little more than ten years when the .right was asserted, denies the right of the adjoining proprietor to put a fence around his ldt, because it will occasion a partial obstruction of the light and air previously enjoyed by,the occupants for that period. The windows, it seems, are so low, that a fence of ordinary height cannot be built without obstructing the light, and the witnesses think the house diminished in value $25; and the plaintiff thereupon claims the prescriptive right to have her windows protected as “ ancient lights;” and thereby, if need be, wholly to deprive the adjacent proprietor of the use of Ms lot, at least to deprive Mm of the right to build or improve upon it in such manner as his interest or fancy may dictate.
It may safely be asserted, that the denial of the right of *243 another to the enjoyment and use of his property, upon a user of such a nature, and for such a length of time, has never been sustained by any court. The consequence of the admission of the right claimed by the plaintiff would be, that the occupants of low and inferior houses, such as are usually the first erected in new towns, at the end of a few years, would acquire rights without any act of adverse possession, which might render useless and waste the most valuable lots for business purposes or residences in onr growing towns and cities. A doctrine fraught with such consequences cannot be the common law of this country. Formerly, we are told, it was holden, that a party could not maintain an action for a nuisance to an ancient light, unless he had gained a right to the window by prescription. (1 Leon., p. 188; Oro. Eliz., p. 118.) But the modern doctrine is, that, upon proof of an adverse enjoyment of lights for twenty years or upwards, unexplained, a jury may be directed to presume a right by grant or otherwise. (2 Saund., 175a.) The modern doctrine may very well be applied to the acquisition, upon the presumption of a grant, of those easements of which there is such adverse enjoyment and user, as to lay a foundation for that presumption against the party who had so long suffered an invasion and ■ denial of his rights, without asserting them. But, in a case like the present,' as has been seen, there is no such adverse enjoyment. No right of the defendant has been encroached upon by the use of the plaintiff’s windows; and there can be no foundation for presuming a grant, as in the case of an adverse enjoyment of a right in analogy to the statute of limitations. The plaintiff cannot have acquired a right or interest in the defendant’s lot merely on account of the manner in which she has used her own, upon any principle analogous to that upon which the statute proceeds. Nothing, as has been said, can be more certain, than that every one has a right to use his own as he pleases, provided he does not *244 thereby injure others; and it is inconceivable that, upon any principle, one can acquire a right or interest in that which is another’s, merely by the manner in which he uses his own. If he could, it would result that one’s right to the use and enjoyment of his property would become lost to him by the acts of another which in .no way affected him, and against which, consequently, he had no remedy, no means of redress-, or prevention, unless, as has been said, by building a wall between himself and his neighbor. Such cannot be the doctrine of the common law. And we think it has been sufficiently shown, that we have both principle and authority for holding that the present action cannot be maintained. ■
Every one who builds upon the margin of his lot, in a town or city, does so with a knowledge that the adjoining proprietor has the same right; and if he would not be put to inconvenience in consequence of the exercise by h'is neighbor of his right, he must have respect to that right in the uses to which he appropriates his own; so that he may enjoy his own, and at the same time suffer his neighbor to enjoy that which is his.
Our opinion upon the right of the plaintiff to maintain the action will dispense with the necessity of our opinion of the question of jurisdiction in the justice.
The judgment is reversed, and the cause
Dismissed.