## C. G. WIEDERANDERS ET AL. v. THE STATE OF TEXAS.

(Case No. 5019.)

1. ESCHEATS — PUBLICATION.— Although the constitution gives the district courts jurisdiction over the subject-matter of escheats, it expressly provides that the legislature shall declare a method for giving effect to escheats, and this jurisdiction can be exercised only in the manner prescribed by the legislature. The legislature has declared that, in addition to actual notice to persons in possession of, or claiming. the estate sought to be escheated, given eight successive weeks previous to the return day of the citation, a notice shall be published in the county newspaper, setting forth briefly the contents of the petition, and requiring all persons interested in the estate to appear and show cause why it should not be vested in the state. In case this requirement is not complied with the court has no jurisdiction.

2. SAME.— It makes no difference that parties appear and claim to be the heirs of the deceased; their claims cannot be considered until all persons who may be interested in the estate are notified in the manner provided by statute.

3. PROOF.— In order to sustain an action for escheat, it is necessary for the state to produce some proof that the deceased died without having devised the property and that there was no administration upon the estate.

4. ALIENS — CONDITION SUBSEQUENT.— By express provision of the constitution of the republic, aliens could take by inheritance from a citizen, and were given a reasonable time within which to become citizens or to dispose of their estates. The act of January 28, 1840, re-enacted March 18, 1848, fixed nine years as a reasonable time, and provided that unless an alien should become a citizen or dispose of the estate within that period, it should be declared forfeited and should escheat to the state.

5. SAME.— An estate in fee vests in the alien immediately on the death of the ancestor, subject to be defeated by his failure .to become a citizen or to dispose of the estate within the period prescribed by the statute. This is not a limitation, but a condition subsequent, and on a failure to comply with it the resumption of the estate must be by entry under judicial process.

6. LEGISLATION — ACTION — STATUTE CONSTRUED.— R. S., arts. 1770–1785, authorize proceedings only in those cases in which persons die having no heirs. The constitution gives the legislature power to provide methods by which lands may be forfeited or escheated; until such a method is provided no officer has the right to institute a proceeding to enforce a forfeiture, nor has any court jurisdiction to declare such forfeiture. The legislature has provided no method for escheating lands which have descended to alien heirs; therefore the courts have no jurisdiction to declare such escheats.

7. WRIT OF ERROR.— An entire judgment escheating property may be reversed by a writ of error sued out by part of the defendants only, for the statute in express terms gives to any party to the proceedings, without reference to the interest he may have in the subject-matter of litigation, the right to prosecute a writ of error; and besides, it was probably not intended that proceedings to declare escheats, as in this case, should be prosecuted by a number of separate suits.

ERROR from Burnett. Tried below before the Hon. W. A. Blackburn.

The opinion sets forth the facts.

*Robertson & Williams* and *A. J. Peeler*, for plaintiff in error, on publication of notice, cited: Pasch. Dig., art. 3660; R. S., arts. 1773, 1236; Hill *v.* Faison, 27 Tex., 430; Stephenson *v.* Railroad Co., 42 Tex., 169; Simpson *v.* Mitchell, 47 Tex., 572; Stegall *v.* Huff, 54 Tex., 193; State *v.* Teulon, 41 Tex., 249.

On the claim of the alien heirs, they cited: Pasch. Dig., arts. 3657, 3658; R. S., arts. 1770, 1771; Const. 1869, sec. 20, art. 4; Hughes *v.* State, 41 Tex., 10; State *v.* Teulon, 41 Tex., 249.

On the sufficiency of the evidence to sustain the judgment, they cited: Pasch. Dig., arts. 3657, 3658; R. S., arts., 1770, 1771; Hughes *v.* State, 41 Tex., 10; State *v.* Teulon, 41 Tex., 249; Const. Republic, sec. 10, Gen. Prov.; Pasch. Dig., arts. 44–48; Sabriego *v.* White, 30 Tex., 576; Settegast *v.* Schrimpf, 35 Tex., 323; Andrews *v.* Spear, 48 Tex., 567; Hanrick *v.* Hanrick, 54 Tex., 101; Ortiz *v.* Benavides, Galv. term, 1884; Osterman *v.* Baldwin, 6 Wall., 116; Airhart *v.* Massieu, 8 Otto, 491; Phillips *v.* Moore, 10 Otto, 208.

No briefs on file for defendant in error.

STAYTON, ASSOCIATE JUSTICE. — It appears that at some time prior to April 11, 1878, the state, by its proper officer, instituted a suit in the district court for Burnett county to escheat two tracts of land situated in that county, alleged to have belonged to Donald Smith, who died in the year 1852.

Johnson and Billick were alleged to be in possession of the land, and Robert T. Penn was alleged to set up some claim, and they were all made parties and brought before the court as defendants.

While the petition thus stood, the court ordered *scire facias* to issue requiring all persons interested in the estate to appear and show cause why the land should not be vested in the state.

The writ thus directed to issue, containing, as directed by the court, a substantial statement of the contents of the petition with a description of the two tracts of land, was issued July 23, 1878, and was published in a newspaper published in the county for four weeks, the last publication being on August 21, 1878.

It appears that another petition was filed December 31, 1879, but nothing appears as to its contents; but on April 23, 1880, what is termed an amended petition was filed, and in that the escheat of the same two tracts of land named in the first petition and in the *scire facias* published was sought; as was the escheat of two tracts of land, not mentioned in the original petition, alleged to have been the property of Donald Smith at the time of his death, situated in

Lee county, of one of which tracts the defendants Wiederanders and Caspar were alleged to be in possession, and of the other, Conrad Frash was alleged to be in possession.

Service was made on the defendants, Wiederanders, Caspar and Frash, but no publication was made of the proceedings as required by art. 1773, R. S., after the filing of the amended petition on April 23, 1880.

Ann Watt, Ann Smith and William Smith, representing themselves to be citizens of Aberdeen, in Scotland, in the kingdom of Great Britain, on December 23, 1879, made themselves parties to the action, claiming to be the sole heirs of Donald Smith, and as against them a plea of alienage was filed by the state.

On May 11, 1881, a final judgment was rendered in the case, vesting the title to the four tracts of land in the state, and ordering the sale thereof as escheated lands, from which the defendants, Wiederanders, Caspar and Frash, prosecute a writ of error.

The first assignment of error is: "The court was without jurisdiction against the defendants in said cause, because of the want of due and legal service of process and publication of order citing parties in interest to appear and defend, as is required by law."

The purpose for which proceedings of this character are instituted is to have a judicial declaration, in the form of a solemn judgment made by a court having jurisdiction of the subject-matter, and of the persons in interest in so far as publication can give it, that the facts exist which, under the law, cast title upon the state to property with which, at some former time (in case of lands), it had clothed a person with title.

The statute thus declares: "If any person die seized of any real, or possessed of any personal, estate, without any devise thereof, and having no heirs, or where the owner of any real or personal estate shall be absent for the term of seven years, and is not known to exist, such estate shall escheat to and vest in the state." R. S., 1770.

The succeeding articles declare under what circumstances the proper officer may institute proceedings to have the property adjudged to belong to the state.

In addition to requiring *scire facias* to be served upon such persons as are alleged to be in possession of or claiming the estate, the statute further requires that "the court shall make an order setting forth briefly the contents of such petition, and requiring all persons interested in the estate to appear and show cause why the same should not be vested in the state, which order shall be published as required by art. 1236."

The constitution expressly confers upon the district courts jurisdiction of "all suits in behalf of the state to recover penalties, forfeitures and escheats" (art. V, sec. 8, Const.); but the same constitution declares that "the legislature shall provide a method for determining what lands have been forfeited, and for giving effect to escheats." Const., art. XIII, sec. 1.

The law now in force must be deemed to be a law providing a method for giving effect to escheats.   R. S., 1770–1788.

Although the constitution gives to the district courts jurisdiction over the subject-matter of escheats, yet that jurisdiction can be called into exercise, in a given case, in the manner or method prescribed by the legislature and in no other.

The legislature has declared, as a prerequisite to the exercise of this jurisdiction by a district court, that a petition shall be filed by the proper officer, containing averments of certain facts, and praying for a writ of possession in behalf of the state.   Without the filing of a petition by the proper officer, substantially in accordance with the requirements of the statute, it is certainly true that the jurisdiction conferred by the constitution on the district courts could not be legally exercised.   The legislature has further declared, that in addition to actual notice which is required to be given to persons in possession of or claiming the estate sought to be escheated, notice, setting forth briefly the contents of the petition, and requiring all persons interested in the estate to appear and show cause why the same should not be vested in the state, shall be published in a newspaper published in the county, or if there be none published in the county, then in the nearest county where a newspaper is published, once in each week for eight successive weeks previous to the return day of the citation.   R. S., 1773, 1236.

So stood the law when the plaintiffs in error were brought into the case; prior to which time there had not been any effort made to have declared escheated the two tracts of land in Lee county. When the proceeding was originally instituted against the land situated in Burnett county, publication was required, as under the law now in force, but only for four weeks.   P. D., 3660.

Could the notice thus required by law be dispensed with, and the court exercise, in the given case, the general jurisdiction given over the subject of litigation by the constitution?

Where the constitution expressly requires that the legislature shall provide a method for giving effect to escheats, it thereby, in effect, declares that the jurisdiction conferred in general terms shall be exercised in the manner or method and under the rules prescribed by the legislature.

If the courts may disregard the rules made by the legislature, in reference to this matter, in one respect, they may do so in another, and the rules which the constitution made it obligatory on the legislature to enact for the express purpose of regulating and calling into exercise the general jurisdiction of the courts may be set at naught.

It was held in the case of The State v. Teulon, 41 Tex., 252, that the failure to give notice by publication, as required by the statute in cases of this kind, required a judgment rendered escheating property to be reversed.

We are of the opinion that the publication of notice, required by the statute, is made necessary to the exercise of the general jurisdiction conferred, and that without it the district court had no jurisdiction to try the case.

The object of such a proceeding is not simply to have a decree declaring the escheat and vesting the title in the state; but by and through process, to be issued under the judgment, to divest not only the title of persons entitled to take the property of the deceased as his heirs, if perchance any such there be, but also by a sale to divest the title of the state, and to start, and confer upon the purchaser, a new title deraigned directly from the sovereign of the soil.   R. S., 1777–1780.

The proceeding, while not strictly a proceeding *in rem*, has many of its characteristics; yet the statute does not direct a seizure of the thing, which, in some cases, has been held to support a judgment strictly *in rem*.   It applies to personalty as well as realty.   The mere institution of the proceeding creates no presumption that there is no one capable of taking the estate under the rules regulating the descent of estates of deceased persons — the presumption is to the contrary; and the effect of the judgment, if rendered after all persons interested in the estate are notified of the pendency and purpose of the proceeding in the only manner in which they can be, if unknown, is to destroy that presumption and to make the title of the state clear.

From the time the property is sold under a valid decree, the claim of the person who might have taken it as heir, devisee or legatee is against the proceeds of the property, which must be paid into the state treasury (R. S., 1780–1785), and to recover even that he is driven to a suit.

It certainly is not the intention that the purchaser of escheated lands shall be subjected to the peril of losing them after they have been regularly escheated and sold, if an heir, devisee or legatee shall subsequently make claim; nor that personalty which, from day to

day, changes hands, shall be subject to the claim of such persons, however valid such claim may have been if asserted in proper time and place; yet such results would follow if the jurisdiction of the court is not so brought into exercise by a substantial compliance with the requisites of the statute as to clothe it with power, by its judgment, to conclusively settle the title to the property as against all persons.

Such power can only exist when the requirements of the statute are substantially complied with.

The fact that persons appeared in the case and claimed to be the heirs of Donald Smith cannot affect the question, whatever proof they may have made; for, until the court had the power to hear and determine the cause, what was done or said by whomsoever can be of no avail.

There may be those more nearly related by blood to Donald Smith than were the persons who claimed to be his heirs, and before that question can be concluded, all persons who may be interested in the estate are entitled to the notice provided by the statute.

It is not questioned that the proper notice of the proceeding to escheat the two tracts of land in Burnett county was given; but to authorize the declaration of the escheat of an estate, it is necessary that it should be alleged that the deceased died without having devised it, and that there was no administration upon the estate. These things are alleged, but there is no proof whatever in regard to them.

What proof would be requisite in such a case, after a lapse of so great a period of time, it is not now important to consider.

It certainly might have been shown that no will had been probated or letters of administration granted on his estate in the county in which he is shown to have resided and died, if such be the case. The courts judicially know that such facts must be evidenced by records if they exist — that they are as accessible to one person as to another; and in such case a plaintiff, which the state in this case essentially is, is not relieved from making some proof of even a negative averment, proof of which is necessary to sustain its action.

If Donald Smith was a citizen of Texas, and the persons who claim to be his heirs were aliens, then no doubt his estate vested in them at his death and did not escheat; for escheats occur only in case of failure of heirs, *i. e.*, of persons existing at the time of the death of the owner of the estate who under the law can take from him by descent.

By express provision of the constitution of the republic, aliens could

take by inheritance from a citizen (General Provisions, sec. 10), but were given a reasonable time to take possession of or to dispose of the estate.

By the act of January 28, 1840 (H. D., 585), which was re-enacted by the act of March 18, 1848 (H. D., 600), it was provided that "every alien, to whom any land may be devised or may descend, shall have nine years to become a citizen of the state, and take possession of such land, or shall have nine years to sell the same, before it shall be declared forfeited, or shall escheat to the government." Thus was the reasonable time within which alien heirs were required to take possession or to sell fixed at nine years.

Under these laws, it has long been settled that aliens could acquire title to real property as could citizens, by inheritance from a citizen. Cryer v. Andrews, 11 Tex., 170; Barclay v. Cameron, 25 Tex., 241; Hanrick v. Hanrick, 54 Tex., 113.

In the case of Barclay v. Cameron, speaking of appellees, who were aliens, claiming by inheritance from a citizen, Wheeler, J., said: "The appellees, as sole heirs of the intestate, inherited his estate. The title vested in them instantly upon his death, by descent, subject to be defeated by their failure to become citizens, or to dispose of the estate by sale within the period prescribed by the statute.

"That the appellees were the heirs, and that a defeasible estate vested in them by inheritance immediately upon the death of the intestate, cannot admit of question. . . . The appellees were the heirs of the intestate, and unquestionably the estate of which he died seized, vested in them immediately upon his death in November, 1841, by force of the provision of the constitution and statute. It was an estate upon condition that, within nine years from the death of the ancestor, they should become citizens, or should sell the land."

As to the character of this condition, the opinion in that case does not undertake to clearly decide; yet the conclusions arrived at are such as to lead to the holding that the conditions were such as are termed "conditions subsequent."

Such, in our opinion, they must be considered. "A precedent condition is one which must take place before the estate can vest or be enlarged." 4 Kent, 125; 2 Black., 154.

Such cannot be the condition under which the alien heir takes; otherwise the estate could not vest until the performance of the act required; whereas it is well settled that the estate vests immediately upon the death of the ancestor, and is liable to be defeated or divested only upon the failure of the heir to perform the conditions.

Conditions subsequent "are those which operate upon estates already created and vested, and render them liable to be defeated." 4 Kent, 126; 2 Black., 154.

The estate which vests in the alien heir is an estate in fee; an estate without limitation as to the time of its duration, subject, however, to be defeated by failure to perform the conditions imposed by law.

The requirements of the statute cannot operate as a limitation, the nature of which is to determine the estate when the period of limitation arises.

"Words of *limitation* mark the period which is to determine the estate; but words of *condition* render the estate liable to be defeated in the intermediate time, if the event expressed in the condition arises before the determination of the estate, or completion of the period described by the limitation. The one specifies the utmost time of continuance, and the other marks some event which, if it takes place in the course of that time, will defeat the estate. The material distinction between a condition and a limitation consists in this: that a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs. But it is in the nature of a *limitation* to determine the estate when the period of limitation arises without entry or claim." 4 Kent, 127. For breach of condition the resumption of the estate was required to be by judicial process. It is clear that the estate taken by an alien heir, under the laws of this state applicable to this case, is not one under limitation, absolute, conditional or collateral, as these terms are used by common law writers (4 Kent, 127, 128, 129); but that the estate so taken is a vested estate in fee, subject to be defeated by non-compliance with one of two conditions subsequent, imposed by law.

We have referred to these matters for the purpose of ascertaining the true state of the title to the lands mentioned, the true relation of the state thereto, and the methods necessary to be pursued by the state to assert whatever right it may have.

It is then evident, if the facts stated by those who claim to be the heirs of Donald Smith be true, that he did not die "having no heirs."

This being true, it follows that the provisions of the Revised Statutes (arts. 1770–1785) have no application whatever to the facts of this case; for they only authorize proceedings in cases in which persons having estates have died having no heirs — have application only to cases of escheat proper.

The conditions under which alien heirs take not being conditions

precedent, and the provisions of the statute not operating as a limitation on the estate of the alien heirs, *ipso facto* divesting an estate formerly vested in such person by the expiration of the period of limitation, the state cannot maintain this action, as might it or an individual clothed with title; for the title at the death of Donald Smith vested in whomsoever may have sustained such relation to him as to be deemed in law his heir.

If the averments of those who claim to be the heirs of Donald. Smith be true, then the case is this: the title to the land vested in them at the time of the death of their ancestor, and the state now has simply the right, if the heirs have not complied with the conditions imposed by law, to have the estate *forfeited* for such failure, unless such right has been affected by treaty, or the act of February 15, 1854 (R. S., art. 9), and by legislation of the country of which such heirs are citizens, responsive to that act, of which we need not now inquire. No officer of this state, however, has the right to institute a proceeding to have such a *forfeiture* declared, nor has any court within the state the jurisdiction to declare such a *forfeiture*, until the state through the legislature has declared the will of the state to enforce its right to have the forfeiture declared, and has provided the method by which this shall be done.

The constitution itself contemplates that the legislature shall act, and shall put in motion and provide rules for the exercise of this right.

It provides that "the legislature shall provide a method for determining what lands have been *forfeited*, and for giving effect to escheats."

The act under which this action was instituted neither declares the will of the state to enforce the *forfeiture*, nor provides a method by which it shall be done, but applies solely to cases in which persons have died, or are presumed to have died, having no heirs. The one is simply the declaration by a decree of court that no one lived who could inherit from the deceased, and takes away no right in any one which existed before the decree; but the effect of a decree of *forfeiture*, upon the ground that alien heirs have not complied with the conditions provided by law, is to divest a right which, but for the decree, would have continued in the alien heir, notwithstanding the existence of the facts which would authorize a forfeiture.

The right to a forfeiture arises when there are heirs who can and do take, if they fail to comply with the conditions imposed by law to enable them to obtain an indefeasible estate.

In considering the question of forfeiture, under the constitution

of 1845, Wheeler, J., said: "Section 4 of article 13 of the constitution declares that 'all fines, penalties, forfeitures and escheats which have accrued to the republic of Texas under the constitution and laws shall accrue to the state of Texas, and the legislature shall by law provide a method for determining what lands may have been forfeited or escheated.' The legislature has, as yet, made no provision on this subject; and, until some provision shall be made, it is evident that, under the constitution, no such proceeding can be instituted."

As if to emphasize this rule, Lipscomb, J., in the same case, said: "The appellant alleges that the conditions were not performed, and that a forfeiture of the title was the consequence. He is here met, however, by the (fourth) section of the schedule of the constitution of the state, directing that 'the legislature shall by law provide a method for determining what lands may have been forfeited or escheated.' No method having yet been provided by the legislature, it presents a case in which all jurists agree that the courts must wait the lead of the political authority before they can act." Hancock v. McKinney, 7 Tex., 456, 457; Swift v. Herrera, 9 Tex., 279.

This rule has been recognized in reference to the statute requiring alien heirs to take possession of or sell property inherited from a citizen. Barclay v. Cameron, 25 Tex., 243; Hanrick v. Hanrick, 54 Tex., 113; Sabriego v. White, 30 Tex., 589. And is conclusive against the right of the state to recover in this action if it appear that Donald Smith, a citizen, died, having heirs, although they may have been aliens.

These matters have been noticed in view of another trial, and of the probability that they may facilitate the final disposition of the case.

We have had some doubt if the entire judgment should be reversed on the writ of error sued out by a part of the defendants only, but in view of the fact that the statute gives in express terms to any one a party to the proceeding, without reference to the interest he may have in the subject-matter of litigation, the right to prosecute a writ of error, and in view of the further fact that it was not probably intended that these proceedings to declare escheats should be prosecuted by a number of separate suits, we deem it proper to reverse the entire judgment for the errors indicated, and to remand the cause for further disposition.

It is accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered May 5, 1885.]