

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS

~~XXXXXXXXXX~~SON

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Bascom Giles
Commissioner
General Land Office
Austin 14, Texas

Dear Mr. Giles:

Opinion No. 0-5553
Re: Authority of the Governor and
the Commissioner of the General
Land Office to issue patents on
escheated permanent free school
land.

Reference is made to your letter of April 1, 1944 which
is as follows:

"The School Land Board and the Commissioner of
the General Land Office are offering certain es-
cheated lands for sale at the general sale of school
lands scheduled May 2nd of this year.

"These lands are being offered under authority
conferred by Chapter 60, Acts of the 3rd Called Ses-
sion of the 43rd Legislature, 1934, and the applica-
ble provisions of House Bill 9, Acts of 1939. More
than four years has elapsed since the lands escheated
to the State.

"Some question has been raised as to the author-
ity of the Governor and the Commissioner of the Gen-
eral Land Office to issue patents on escheated lands
after they have been sold and fully paid for under
the above law.

"Will you therefore kindly advise me if the
Governor and the Commissioner have legal authority
to issue patents on these lands after they are sold
and fully paid for."

We are in accord with your view that escheated permanent
free school land is to be offered for sale by the School Land
Board and the Commissioner of the General Land Office under the
authority conferred by the provisions of Chapter 60, Acts of
43rd Legislature, Third Called Session, 1934, and the applicable
provisions of House Bill 9, Acts of 1939.

Under the provisions of Article 3272, Vernon's Annotated Civil Statutes, escheat occurs and vests title in the State immediately upon the death of the intestate without heirs. The succeeding Article under Title 53, Vernon's Annotated Civil Statutes prescribes the manner under which the State establishes its title. Ellis v. State, 21 S.W. 66; Robinson v. State 87 S.W. (2d) 297.

Article 3286, Vernon's Annotated Civil Statutes provides that if any person, as an heir, or devisee or legatee appears after the death of the testator or intestate and claim any part of the money or property, he may file a petition against the State ascerting such claim provided such suit is instituted within four years after the date of the final judgment escheating such property to the State, and not thereafter.

You state in your letter that more than four years have elapsed since the date final judgment was entered escheating the land being offered for sale, and no such claimant has appeared. We assume that the escheat proceedings in the District Court were regular in all respects. These facts being true, the State's title to the escheated land is now absolute. The question remaining is "How may escheated permanent free school lands be titled by the State of Texas?"

In the case of Weideranders v. State of Texas, 64 Texas 133, the Supreme Court in an opinion by Mr. Justice Stayton said:

". . . . . .

"The constitution expressly confers upon the district courts jurisdiction of 'all suits in behalf of the state to recover penalties, forfeitures and escheats' (art. V, sec. 8, Const. ); but the same constitution declares that 'the legislature shall provide a method for determining what lands have been forfeited, and for giving effect to escheats.' Const., art. XIII, sec. 1.

". . . . . . . "

In carrying out the provisions of the Constitution, the 43rd Legislature, Third Called Session, 1934, enacted Chapter 60, now codified as Article 3281 in Vernon's Annotated Civil Statutes, and which provides:

"All lands heretofore or hereafter escheated to the State of Texas by provisions of this Title are hereby dedicated, appropriated and set apart to the Permanent Free School Fund of the State of Texas.

. . . . Any escheated permanent free school lands
may be sold by the Commissioner of the General Land
Office for not less than one-tenth of the purchase
price in cash and the balance of said purchase price
payable in nine equal annual installments, said
deferred installments to bear interest at the rate
of six (6) per cent per annum. Any lands so sold
shall be sold to the highest bidder as are other
public free school lands but no escheated lands shall
be sold at a price of less than Two Dollars and Fifty
Cents ($2.50) per acre. All sales of escheated per-
manent free school lands shall be with a reservation
to the State of all the minerals in the land in
favor of the Permanent Free School Fund. . . . ."

Escheat has been defined by the Supreme Court of Texas
in the case of Hughes v. State, 41 Texas 10, as follows:

"Title to land by escheat originated from and
was a consequence of the feudal law, whereby, upon
the failure of heirs of the person last seized, who
may lawfully take the estate by succession, it fell
back or reverted to the original grantor, his decend-
ants, or successors. And, as under the general
doctrine of tenures in the American States, the State
occupies the place of the feudal lord by virtues of
its sovereignty, it is universally asserted that,
when the title to land fails for lack of heirs or
devisees, who may lawfully take, it reverts or es-
cheats to the State as property to which it is en-
titled."

In this connection, we find the Supreme Court of Texas
in the case of Weideranders v. State, supra, holding:

". . . . . .

"The object of such a proceeding is not simply
to have a decree declaring the escheat and vesting
the title in the state; but by and through process,
to be issued under the judgment, to divest not only
the title of persons entitled to take the property
of the deceased as his heirs, if perchance any such
there be, but also by a sale to divest the title of
the state, and to start, and confer upon the purchaser,
a new title deraigned directly from the sovereign of
the soil."

This holding of the Supreme Court of Texas was adopted
verbatim by the Supreme Court of the United States in the Texas

case of Hamilton v. Brown, 161 U.S. 256, 40 Law Edition 697, and followed by the Texas Court of Civil Appeals in the case of Unknown Heirs of Buchanan v. Creighton. -- McShane Oil Company, 176 S.W. 914.

The Supreme Court in the case of Hughes v. State, supra, with respect to the disposition of escheated land said:

"....

"..... The survey and patent of the land to de la Tulle severed it from the mass of the public domain, and though it may be reinvested in the State again as escheated property, it will not become thereby subject to location or pre-emption until this has been done, if then, without direct legislation subjecting it to such appropriation. . . . ..

"....."

It might be well to note that the decisions of the Courts quoted above followed and referred to the old Statute which provided that escheated land be sold by the sheriff by order of the Court declaring the escheat, the sheriff failing, then by the Attorney General. That the Legislature, under the Constitution, is to give effect to escheats, and is authorized to dedicate, appropriate and set apart unsold land belonging to the State to the Permanent Free School Fund, is well settled. Chapter 60, supra, amended the escheat law changing the method of sale, and dedicated, appropriated and set apart escheated land to the Permanent Free School Fund. It is now sold subject to the reservations in the Amendatory Act that are not in conflict with the provisions of House Bill 9.

In connection with the titling of land owned by the State, we find a discussion of this subject in an opinion written by Mr. Justice Gaines in the case of Taylor v. Hall, 71 Texas 213, in which he said:

"....

"..... Since the passage of the act which established the general land office and provided for issuing patents, no law has been passed which recognized any other method of extending titles from the State to those who acquired rights to specific portions of its public domain. . . . .

"..... To the rule of authorizing patents to issue in case of legislative confirmations or

relinquishment there were a few exceptions at a very
early day. But we think the statutes above refer-
red to are sufficient to indicate a well defined
policy on the part of the Legislature to provide for
patents to all lands, the title to which were con-
firmed by or emanated directly from the Republic
or State. . . . . .

     " . . . . ."

Insofar as we can determine, the policy approved and
followed by Judge Gaines has remained and is the policy of the
State of Texas at this time. The escheated lands having reverted
to the State and all previous titles or claims to it having
been nullified  by the escheat proceedings, we think title to
this land is to begin anew direct from the sovereign of the
soil. You are accordingly advised that it is the opinion of
this office that the Governor and the Commissioner of the Gen-
eral Land Office have legal authority to issue patents on es-
cheated permanent free school lands after it has been sold
and the purchase price has been paid in full.

                              Yours very truly

                         ATTORNEY GENERAL OF TEXAS

                         By s/Jack W. Rowland
                            Jack W. Rowland
                            Assistant

JWR/pw/wc

APPROVED APR 25, 1944
s/Geo. P. Blackburn
(Acting) ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By_s/BWB_Chairman