## WALKER *v.* TEAL.

*(Circuit Court, D. Oregon.   January 10, 1881.)*

1. CONDITIONAL LIMITATION—DEMAND OF POSSESSION IN CASE OF CO-
   TENANTS.—G. conveyed an undivided interest in certain real property
   to H., in trust, to secure the payment of a loan from W., with an
   agreement that G. might remain in possession and take the rents and
   profits without account, until the note given for the loan was overdue
   and unpaid, in which case the trustee was to take possession and dis-
   pose of the property to satisfy the debt, and G. was to surrender the
   possession for this purpose on demand.  The note became overdue and
   remained unpaid, and G. conveyed his interest in the premises to his
   co-tenant, T., and gave him possession, when H. demanded such pos-
   session from T., who refused unqualifiedly, and continued to occupy
   the property, and received the rents and profits thereof until the
   same was sold at a judicial sale, at the suit of H., for less than two-
   thirds of the loan and interest.  *Held:*

   (*a*) That the interest which G. had in the property, in case the debt
   was not duly paid, was not an estate upon condition which was not
   avoided until a demand for possession, but an estate upon a condi-
   tional limitation which terminated with the happening of the con-
   tingency—the note becoming overdue and remaining unpaid—with-
   out any demand.

   (*b*) That the demand for possession required by the agreement was,
   under the circumstances, not a demand for the purpose of avoiding an
   estate, and therefore insufficient, unless made exactly for that which
   the trustee was entitled,—nothing more nor less,—but was the equiv-
   alent of a mere notice to quit by a landlord upon a tenant at will,
   and was sufficient, although in form it may have included the exclu-
   sive possession of the whole property—the refusal being in effect a
   denial of the trustee's right to the possession even as a co-tenant.

   (*c*) The trustee being entitled, as co-tenant with T., to the posses_
   sion of the whole property, and the demand having been made by him
   for possession in pursuance of the agreement, it is to be construed and
   understood as a demand for possession as such co-tenant, and there-
   fore it was not larger than the right of the party making it, and is
   sufficient, even if it was to have the effect of avoiding an estate.

2. CONSTRUCTION OF DIRECTION TO TRUSTEE TO SELL.—A conveyance
   in trust to secure the payment of a loan is made primarily for the ben-
   efit of the lender, and should be construed, so far as it is open to con-
   struction, so as to effect the object for which it was made; and, there-
   fore, where such a conveyance provided that upon default in the
   payment of the loan the trustee should take possession and sell the
   property upon 30 days' notice, *held,* that the authority to sell was for

the benefit of the lender, and the trustee was not bound to sell until he thought best for the payment of the loan, or was directed to do so by a court of equity, and, in the meantime, it was his duty to apply the rents and profits upon the debt.

Action at law to recover damages.

*Benton Killin,* for plaintiff.

*W. Lair Hill* and *H. Y. Thompson,* for defendant.

DEADY, D. J. The plaintiff, a British subject, brings this action to recover $16,000 damages, alleged to have been sustained by him on account of the refusal of the defendant, a citizen of Oregon, to deliver to him the possession of certain real property in Oregon, and wrongfully withholding the same from the plaintiff from July 6, 1877, to November 30, 1878, to-wit: the S. $\frac{1}{2}$ of lots 2 and 7 in block 38, and the undivided $\frac{1}{2}$ of the N. $\frac{1}{2}$ of lot 6, and the undivided $\frac{1}{2}$ of the S. $\frac{1}{2}$ of lot 7, in block 2 in the city of Portland, from which the defendant received rents during said period at the rate of $280 per month, or $4,704 in the aggregate; the undivided $\frac{1}{2}$ of a certain farm situated in Lane county and known as the Teal and Goldsmith farm therein, and the undivided $\frac{1}{2}$ of a certain farm situated in Polk and Benton counties and known as the Teal and Goldsmith farm therein, the reasonable rental value of which, during said period, was $2,000 a year, or $2,800 in the aggregate; and, also, on account of the expense incurred by the plaintiff in instituting and maintaining legal proceedings to enforce the sale of said lands over and above what it would have cost to dispose of the same if the defendant had surrendered the possession thereof to the plaintiff, as he was legally bound to do, $3,100, together with interest. The defendant demurs to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

The facts stated in the complaint necessary to an understanding of the question made in the argument upon the demurrer are these:

On August 19, 1874, the defendant Joseph Teal and Bernard Goldsmith, being the joint owners and tenants in com-

mon of the farms aforesaid, conveyed the same to Henry Hewett by a conveyance absolute in form, but, as set forth in a contemporaneous declaration and agreement, signed by the plaintiff and defendant and said Hewett and Goldsmith, to be held by him in trust as a security for the payment of a note then made by said Goldsmith for the sum of $100,000, and made payable to the plaintiff, or order, two years after date, with interest at 1 per centum per month, payable monthly, with a stipulation that if default was made in the payment of the interest for the period of 20 days the whole sum of the note should, at the option of the holder thereof, become due and payable at once.

By the declaration of trust it was stipulated and provided: (1) That Hewett held the legal title to the property, subject to the right of Teal and Goldsmith to retain possession of the same, and to take and have, without account, the issues and profits thereof—they paying all taxes and public charges im-imposed thereon—until said note should become due and remain unpaid 30 days; (2) that, if such default is made in the payment of said note, Goldsmith and Teal "will and shall, on demand, peaceably surrender to said Hewett" the possession of said property, who "may and shall proceed and take possession" of the same, "and on 30 days' notice in writing to said Teal and Goldsmith, * * * requiring them to pay said debt, * * * and on their failure so to pay shall sell the same at public auction, on not more than 30 days' notice,".or sufficient thereof to pay the debt and charges.

On August 18, 1876, there was due upon said note the sum of $96,750, when, at the instance of said Goldsmith, it was agreed between the plaintiff and defendant and Hewett and Goldsmith that the time of payment thereof should be extended one year, but upon the stipulation, as aforesaid, that if default was made in the payment of the principal or interest the whole sum should "become due and payable as provided in said agreement of August.19, 1874;" and the said Goldsmith, in consideration of such extension, then conveyed to said Hewett the lots aforesaid by a conveyance abso-

lute in form, but, as set forth in said agreement of August 18, 1876, to be held by him as an additional security for the payment of the note aforesaid, and in the manner and for the purposes mentioned in the agreement of August 19, 1874, which agreement was not to be thereby annulled or set aside except so far as the latter might conflict with the former, but the two agreements were "to be taken and construed together."

In April, 1877, Goldsmith made a conveyance of all the property which he had conveyed to Hewett, as aforesaid, to the defendant Teal, and gave him possession thereof.

On July 6, 1877, no part of said principal having been paid, nor any of the interest arising thereon after January 21, 1877, "Hewett demanded from the defendant the possession of all said lands in pursuance of the provisions of said contracts," but the latter refused to surrender "any part" of the same, and held possession thereof until November 30, 1878, and received the rents and profits therefrom during said period.

All the lands aforesaid have been sold either at private or judicial sale, and the proceeds applied upon the plaintiff's debt, but there is still due thereon from said Goldsmith over $50,000, and since April, 1877, he has not had any other property out of which any part thereof could be made.

Upon the argument of the demurrer it was finally admitted by counsel for the defendant that the plaintiff was entitled to the possession of the property from and after the default was made in the payment of said note—January 21, 1877—provided there was a sufficient demand therefor, and to recover in this action such damages as he may have sustained by reason of the defendant's refusal to surrender the same. But it is contended that the demand, being for the whole property, while the conveyance by Goldsmith to Hewett, except as to the south half of lots 2 and 7, in block 38, aforesaid, only included an undivided half thereof, was too large and therefore insufficient; citing *Hodgeboom* v. *Hall,* 24 Wend. 148, and *Bradstreet* v. *Clark,* 21 Pick. 393.

Admitting, for the present, that the demand made by Hewett was larger than his right, are the cases cited to show that it is insufficient parallel with the one at bar? In the case of *Hodgeboom* v. *Hall, supra,* there was a devise of an estate to a son upon condition that he would support his two sisters. The latter, assuming that the condition had been broken and the estate forfeited, brought an action to recover possession of their interest in the property as heirs of the devisor; but the court held, upon the facts, that there was no satisfactory evidence of any demand and refusal of support, and therefore it did not appear that the condition was broken. Here, however, there was a formal demand and refusal, but it is objected that it included more than the party was entitled to.

In *Bradstreet* v. *Clark, supra,* an estate was devised upon condition that the devisee pay the legacies given by the will to the children of the devisor. Afterwards the legatees brought an action to recover the possession of the property, upon the ground that the estate of the devisee was forfeited by a refusal on the part of his grantee to pay the legacy of $10 due one of them. On the trial it appeared from the evidence that the demand was made for the three legacies, two of which had been paid by the devisee, and the court held that the demand, although sufficient to support an action to enforce the payment of the legacy, was not sufficient to avoid the estate, likening it to the case of a leasehold estate held upon the condition of paying rent, which is not forfeited by non-payment unless there is also a demand of the precise sum due—neither a penny more nor less.

The legal title of this property was in Hewett, for the benefit of the plaintiff, and he was therefore entitled to the posession and the pernancy of the profits from the date of the conveyances to him, but for the stipulation in the declaration of trust that Goldsmith might have the posession and profits so long as he was not in default upon his note. In effect, the plaintiff, having loaned Goldsmith $100,000, and the latter having conveyed this property to Hewett to secure the payment of that sum with interest, the parties agreed that instead

of the trustee taking possession of the property at once, and applying the rents in payment of the interest accruing upon the loan, Goldsmith might remain in posession while he paid the interest. The only interest or estate, then, which the defendant had in this property at the time of the demand, as the assignee of Goldsmith, was the possession, so long as the latter duly paid the interest accruing upon his note, and no longer.

This, then, was not an estate upon condition, and therefore it was not necessary that there should have been either an entry or claim (demand) to avoid the estate, upon the breach of the condition, but it was an estate upon a conditional limitation—an agreement for the possession so long as the interest was paid—a possession limited by that contingency; and as soon as it happened the estate terminated, and the right to the possession ceased without any entry or demand upon the part of the plaintiff or his trustee.

The illustration given by Blackstone is in point: "When land is granted to a man so long as he is parson of Dale, or while he continues unmarried, or until out of the rents and profits he shall have made £500 and the like. In such case the estate determines (ceases) as soon as the contingency happens." 2 Black. 155; *The 50 Associates* v. *Howland*, 11 Met. 101; Wash. R. P. 319.

The conveyance to Hewett, and the stipulation concerning his right to the possession upon the failure to pay the note, having been made for the benefit of the plaintiff, in consideration of and as a security for the repayment of the money advanced by him to Goldsmith, they ought to be construed, so far as they are open to construction, favorably to the former, and with a view to effect the object for which they were made. Goldsmith's right to the possession terminated by his own act—his failure to pay the interest upon his note. Between that time and the demand by Hewett, he or his assignee was a mere tenant at will or by suffrance, and the demand of the possession was only necessary on account of the contract to that effect, and to enable the trustee to maintain an action for the same in case it was refused. In

effect, the demand required by the agreement was a mere notice to quit to a tenant holding over after the expiration of his lease or without one.

There is, therefore, no good reason for applying in this case the strict and sometimes absurdly nice rule of the common law touching the nature and effect of a demand which may have the effect to avoid (forfeit) an estate of great value for the non-payment of a comparatively trivial sum as rent or a legacy. There could be no forfeiture in this case—the defendant had nothing to forfeit. Having failed to comply with the terms upon which he was allowed to remain in possession of the property, his right thereto was already gone, and by the demand he was only required to surrender the possession to the party entitled, and even that only for the purpose of applying the profits upon his debt. On the contrary, the rule applicable to this demand is the one which governs in the case of an ordinary demand for the possession of property to which the party upon whom it is made has no longer any right; and if it happens that more is demanded than the party is entitled to, it is a good demand so far as he is entitled, if the refusal is absolute, and goes to the whole demand. Nor do I think that this demand was even too large. It is described in the complaint as a demand for "the possession of all said lands in pursuance of the provisions of said contracts," and it is alleged that the defendant refused to "surrender the possession of any part" of them.

The defendant, as to Goldsmith's interest in the property, stands in his shoes, and had no right, as against the trustee or the plaintiff, that Goldsmith did not have. He took his conveyance with knowledge that the legal title was in the trustee, and that default had been made in the payment of interest, and therefore took nothing by it but Goldsmith's right to the possession, which was then reduced to the minimum—the will of the trustee.

As to lots 2 and 7, aforesaid, there is no question about the sufficiency of the demand. Goldsmith was the owner of them in severalty, and the trustee had succeeded to his right both

of property and possession. As to the rest of the property, the trustee, as the successor in interest of Goldsmith, was seized as tenant in common with the defendant, and after the default in payment of the note was entitled, as such tenant, to the possession of the whole it. Each tenant in common is entitled to the possession of the whole property in common with his co-tenants—"they all occupy promiscuously." 2 Black. 191. Therefore the demand by Hewett for the possession of all the property owned by him and the defendant jointly, in pursuance of the contracts between the parties to the transaction, was a demand for no more than he was entitled to; that is, for the possession of such property as tenant in common with the defendant. The refusal of the defendant was absolute, and equivalent to a denial of any right of possession on the part of Hewett. Thereafter his possession of the property, so far as it belonged to the latter, was unlawful, and he is liable in damages to the plaintiff for any loss thereby sustained.

This disposes of the demurrer. That the plaintiff sustained damages by this unlawful withholding of the possession by the defendant is alleged in the complaint, and that he did so in some measure is self-evident. If the trustee had been let into the possession, as provided by the contracts, he would have received the rents and profits for the benefit of the plaintiff, to be applied upon the note. That possession would have continued until the property was sold or the note had been paid; and, in such case, the plaintiff would either have received the money arising from the sale, or been in the receipt of his share of the rents and profits to have been applied upon the loan. The rents and profits, after deducting the ordinary expenses of keeping the property, are therefore a proper measure for damages which the plaintiff has sustained by the wrongful act of the defendant. The security which Goldsmith gave for the payment of the loan having proved largely insufficient, and a considerable part of that insufficiency having arisen from the fact that the plaintiff or his trustee was deprived by the defendant of the possession

of the property from July 6, 1877, until November 30, 1879, it follows that the value of such wrongful use and occupation by the defendant is the measure of the plaintiff's damage.

It was also suggested in the argument for the defendant that the damages, in any event, could be scarcely more than nominal, for the reason that the possession of the trustee could not have exceeded 30 days, as he was bound by the agreement to sell on that time after coming into possession. But this is altogether a mistaken view of the effect and purpose of the agreement. The power to take possession of the property, and to sell it upon the default of Goldsmith, was given to the trustee, primarily, for the benefit of the plaintiff. Thereafter, Goldsmith's only interest in the property was the right to redeem it by the payment of the loan. He had received the plaintiff's money, and in effect conveyed his property to the trustee in payment thereof, so far as it might suffice, subject to his right to redeem the same by the payment of the loan.

The object of the trust was to enable the plaintiff to make his money out of the property in case Goldsmith should prove personally unable to pay, as the result was, and therefore its provisions are to be construed and applied with a view to that end. Now, while the trustee could not sell unless after 30 days' notice to Goldsmith to pay, and upon 30 other days' notice of such sale, yet he was not bound to sell until he thought best, or it may be until he was required to do so by the direction of a court of equity. It was his right and duty to take possession of the property, and keep, manage, and dispose of it so as to best conserve and promote the interest of the plaintiff, and neither Goldsmith nor the defendant, as his assignee, had any right to impede or control him in the exercise of this power, so long as he kept within the terms of the trust.

For instance, it is admitted that the trustee had a right to take possession of this property and to sell it. But certainly it could not have been contemplated by the parties that he was absolutely bound to sell in 60 days after taking possession without any reference to the state of the market, or what

it would bring. As and when it was sold, the proceeds do not appear to have paid more than two-thirds of the debt, whereas, if the trustee had been admitted into possession, he might have applied the rents and profits on the interest, and ultimately paid the whole debt by a favorable disposition of the property. However this may be, the person directly and primarily interested in the matter was the plaintiff, and the agreement ought to be construed so as to allow him to exercise his judgment whether to hold the property or sell it. The debtor could always protect himself against any abuse of this discretion, to his prejudice, by paying the debt and redeeming the property, or by the interference of a court of equity.

As to the claim for damages on account of the plaintiff's being compelled, by reason of the defendant's refusal to surrender the possession, to bring and maintain a suit in equity to procure a sale of the property, it was not argued by counsel, and need not now be considered.

It, at least, appears from the complaint that the plaintiff is entitled to recover damages for withholding possession of the property during the period alleged, and therefore the complaint states a cause of action.

The demurrer is overruled.