**BRANHAM et al. v. MINEAR.**

**No. 2553.**

Court of Civil Appeals of Texas. Eastland.

Jan. 17, 1947.

Rehearing Denied Feb. 21, 1947.

Paul Petty, of Ballinger, for appellants.

Stubbeman, McRae & Sealy, of Midland, for appellee.

GRAY, Justice.

In an action in trespass to try title, appellee Roy A. Minear, owner of the oil, gas and other mineral rights in four sections of land in Howard County, Texas, sued appellants E. T. Branham, Sam Garth, Jr., and wife Verna Lee Canuteson Garth and C. B. Lawrence, together with numerous other defendants not necessary here to name, owners of the surface rights of said four sections of land and claimants of said mineral interests. By disclaimers, dismissals and failure to appeal, all defendants except those named, were eliminated. The lands involved in this appeal narrows to two tracts: Section 17, Block 31, Township 2 North, T. & P. Ry. Co. containing 640 acres, more or less, and the West ½ of Section 24, Block 32, Township 2 North, T. & P. Ry. Co. containing 320 acres, more or less.

Appellants answered in the trial court by pleas of not guilty, general denial and specially pleaded limitation of three, five, ten and twenty-five years. A jury was duly empaneled to try the case, and at the conclusion of the evidence, defendants (appellants) filed their motion for an instructed verdict, which motion was denied. Thereupon the court, being of the opinion that there were no fact issues to submit, and that plaintiff was entitled to recover as a matter of law, dismissed the jury and rendered judgment for appellee, from which action of the trial court this appeal resulted. No statement of facts has been brought forward in the record, but at the request of appellants, the trial judge filed findings of fact and conclusions of law.

Findings believed to be pertinent to this appeal may briefly be summarized as follows:

1. That plaintiff (appellee) had an unbroken chain of title through deeds and valid probate proceedings effective to pass title from the sovereignty of the soil down to himself.

2. That defendants (appellants) had never at any time been in possession of the oil, gas and other minerals, adverse or otherwise, in, under, and that may be produced from said lands.

3. That defendants (appellants) had not paid taxes before they became delinquent for each and every year for a period of twenty-five years prior to the filing of said suit.

4. That no wells for oil and gas had been drilled on said lands, no mines sunk for other minerals, and no oil, gas or other minerals produced therefrom.

5. That said oil, gas and other minerals had formerly been owned by aliens.

6. That no report of such alien ownership had ben filed in accordance with Article 176, Revised Civil Statutes.

7. That no evidence. was introduced showing that the State of Texas ever instituted proceedings to. recover said tracts of land.

8. That on April 1, 1903 Jane Wightwick, an alien, by warranty deed conveyed said lands to Phillip S. Morgan, in which deed said grantor reserved for herself "any minerals on said land," which was a severance of the mineral from the surface estate.

9. That plaintiff's title was a good fee simple title to said oil, gas, and other minerals.

Under the finding of the trial court that plaintiff (appellee) had a good fee simple title to said oil, gas and other minerals, which finding was fortified by a detailed statement of each and every muniment of title, and the further presumption indulged in favor of the judgment, together with the finding that defendants had not been in possession of same, adverse or otherwise, and had not paid taxes before delinquency, it would seem that an affirmance of the case might be made without further discussion. But appellants attack said finding as to appellee's fee simple title for the alleged reason that said lands while owned by aliens had automatically or ipso facto been forfeited by failure to file reports of ownership as required by said Article 176. As we shall hereinafter attempt to show, there was no such forfeiture, but even should we be mistaken in this and there

had been a forfeiture, such forfeiture would have been to the State and could not have inured to the benefit of appellants, unless by reason thereof, appellee was not entitled to recover on the strength of his own title. Such forfeiture, if there was one, was an escheat, and since Title 5, Revised Civil Statutes relates primarily to alien ownership, we think it necessary to consider constitutional provisions as well as statutes relating to escheat in connection with said Title 5 in disposing of this appeal.

Article 5, Section 8, Constitution of Texas, Vernon's Ann.St., confers on the District Courts original jurisdiction "in all suits in behalf of the State to recover penalties, forfeitures and escheats" and "of all suits for trial of title to land and for the enforcement of liens thereon". Article 172, Title 5, Revised Civil Statutes is as follows:

"The Attorney General or the district or county attorney when he shall be informed or have reason to believe that lands in this State are being held contrary to the provisions of this title shall institute suit in behalf of the State of Texas praying for the escheat of the same on behalf of the State."

Article 171, Title 5, contains this provision:

"Any alien who shall hereafter acquire lands in Texas, in contravention of the provisions of this title, may, nevertheless, convey the fee simple title thereof at any time before the institution of escheat proceedings as hereinafter provided."

From Article 176, we quote:

"Any alien or alien corporation who may now own land in Texas, or who may hereafter acquire any land in Texas, by purchase or otherwise, who does not within the time prescribed in this article, file the reports herein provided for, *shall be subject to have* such land forfeited and escheated to the State of Texas." (Emphasis ours.)

 Turning to Title 53, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 3272 et seq., relating to escheat, we find that Article 3272 declares when and under what conditions estates shall escheat to the State. Any person paying taxes to the State on such property, either personally or through an agent, is not concluded by the judgment unless he be made a party and cited. The concluding sentence of the article prescribes the diligence which must be used to perfect service. Article 3273 sets out requirements of the petition, which must be sworn to, the facts and diligence used to discover the claimants of the property, the facts and circumstances by which the property was claimed to have escheated and prayer that same be escheated and for writ of possession on behalf of the State. Article 3274 provides for citation as in other civil causes, and Article 3275 further provides for an additional citation by publication to all persons interested. Subsequent articles relate to the trial and judgment and provide that writ of possession shall not issue until two years from date of final judgment. The quoted constitutional and statutory provisions leave no room for doubt that an escheat in this State comes only through a judicial proceeding. Even though the facts as to an escheat may exist, a judgment of court is necessary to establish and give them legal vitality.

Under Title 5, relating to alien ownership of land, we think there can be no doubt from the language used in several articles that a judicial proceeding was contemplated and required. Article 172, quoted above, provides that the district or county attorney, if informed or having reason to believe that lands in this State are being held contrary to the provisions of said Title, "shall institute suit in behalf of the State of Texas praying for the escheat of the same on behalf of the State." If there had been an ipso facto forfeiture of the lands, why the positive requirement that a suit be instituted? Under Article 171, aliens who had acquired lands in this State contrary to Title 5 were, nevertheless, authorized to convey same by good fee simple title before escheat proceedings were begun. Undoubtedly the Legislature did not intend to create an anomaly in that one, who though having ipso facto forfeited lands, was yet authorized to convey same in fee simple.

In Article 176, the failure to file the required report of ownership within the time prescribed rendered the land *subject to be forfeited and escheated to the State*. We do not construe this as providing for an ipso facto forfeiture, but as negativing

same. Had the Legislature intended the penalty to be an ipso facto forfeiture of the land, it would undoubtedly have said so instead of saying the land should be subject to be forfeited and escheated. The language used clearly indicates a future proceeding, something yet to be done or performed. In 1941, the Legislature added Article 176A to the title, which reads as follows:

"All aliens and all alien corporations that have not, within the times prescribed by Article 176, filed the reports therein provided for, may file such reports on or before the last day of December, 1941, and such filings shall be deemed compliance with Article 176."

Article 176, enacted in 1921, required such reports to be filed on or before the last day of January, 1926. While failure to file same rendered the property subject to be forfeited and escheated to the State, yet in 1941, the Legislature by adopting Article 176A recognized that such forfeitures had not actually occurred.

But we are not confined alone to the statutes for authority for the views expressed above. The courts of Texas have recognized from the Republic down through the years and under the several constitutions that a judicial proceeding was necessary to effect an escheat. In Wiederanders v. State, 64 Tex. 133, the Supreme Court said:

"The purpose for which proceedings of this character are instituted is to have a judicial declaration, in the form of a solemn judgment made by a court having jurisdiction of the subject-matter, and of the persons in interest in so far as publication can give it, that the facts exist which, under the law, cast title upon the state to property with which, at some former time (in case of lands), it had clothed a person with title."

On page 136 of the same authority, the court further said:

"The constitution expressly confers upon the district courts jurisdiction of 'all suits in behalf of the State to recover penalties, forfeitures and escheats' (art. V, Sec. 8, Const.) ; but the same constitution declares that 'the legislature shall provide a method for determining what lands have been forfeited, and for giving effect to escheats.' Const., art. XIII, Sec. 1.

"The law now in force must be deemed to be a law providing a method for giving effect to escheats. R.S., 1770-1788.

"Although the constitution gives to the district courts jurisdiction over the subject-matter of escheats, yet that jurisdiction can be called into exercise, in a given case, in the manner or method prescribed by the legislature and in no other.

"The legislature has declared, as a prerequisite to the exercise of this jurisdiction by a district court, that a petition shall be filed by the proper officer, containing averments of certain facts, and praying for a writ of possession in behalf of the state. Without the filing of a petition by the proper officer, substantially in accordance with the requirements of the statute, it is certainly true that the jurisdiction conferred by the constitution on the district courts could not be legally exercised. The legislature has further declared, that in addition to actual notice which is required to be given to persons in possession of or claiming the estate sought to be escheated, notice, setting forth briefly the contents of the petition, and requiring all persons interested in the estate to appear and show cause why the same should not be vested in the state, shall be published in a newspaper published in the county, or if there be none published in the county, then in the nearest county where a newspaper is published, once in each week for eight successive weeks previous to the return day of the citation."

From the chapter on escheats in 17 Tex. Jur., page 75, Sec. 4., we quote:

"The constitution in effect declares that the jurisdiction conferred in general terms shall be exercised in the manner or method and under the rules prescribed by the legislature. Accordingly, no escheat nor any proceeding therefor can be had except under and according to the legislative enactments. The method provided must not be departed from in any essential particular, otherwise the judgment will be null and void."

In 30 C.J.S., Escheat, § 8, page 1175, the rule is stated as follows:

"The proceeding to enforce an escheat is in the nature of an inquest of office. The procedure is now generally regulated by statute, and, when so regulated, the escheat must be established in the manner prescribed and all the requirements of the statute substantially complied with."

In the case of Robinson et al. v. State et al., Tex.Civ.App., 87 S.W.2d 297, 298, it is said:

"The statutes (article 3273) require that the petition shall set forth the description of the estate, the name of the person last lawfully seized of possession of the same, the name of the tenants or persons in actual possession, if any, the names of the persons claiming the estate, if any such are known to claim or whose claim may be discovered by the exercise of reasonable diligence, and the facts or circumstances in consequence of which such estate is claimed to have escheated and the diligence exercised to discover the claimants of same. Forfeitures not being favored by the law, it has been held that no escheat, nor the proceeding therefor, can be had except under and according to the legislative enactments, Hamilton v. Brown, 161 U.S. 256, 16 S.Ct. 585, 40 L.Ed. 691, and that the method provided must not be departed from in any essential particular, otherwise the judgment will be void. 17 Tex.Jur., § 4, pp. 75 and 76; Caplen v. Compton, 5 Tex.Civ.App. 410, 27 S.W. 24; Wiederanders v. State, 64 Tex. 133."

Appellants cite the Supreme Court case of State v. DeGress, 72 Tex. 242, 11 S.W. 1029, as authority for their contention that there was an ipso facto forfeiture of the minerals here involved. Said decision was rendered in 1888, which was 33 years before Article 176 was enacted. The language in said decision on which they rely is: "Forfeiture is where a person loses some property, right, privilege, or benefit in consequence of having done or omitted to do a certain act". Appellants contend that the quoted definition determines the construction to be given Article 176. The quoted definition does not control the later adopted statute relating to an altogether different proceeding. The cited case was a quo warranto proceeding to determine the qualification of the respondent to hold the office of alderman in the City of Austin and has no bearing whatever on forfeiture or escheat of lands owned by aliens. Obviously, the case is not in point.

Appellants argue that the equitable rule against forfeitures should be relaxed in this case, and undertake to draw an analogy to oil and gas leases in which such forfeitures are favored. We cannot agree with this contention. Oil and gas leases contain conditions for defeasance, which are usually for failure to pay certain money rentals in lieu of drilling operations and for failure to produce oil or gas in paying quantities within the period fixed in the lease. The lessor is interested in timely development under the precise terms of the lease. But fee simple ownership of the minerals presents an entirely different situation. If no development is had, the owner of the minerals may lose, but that would not justify forfeiture of his property. He is free to develop or not develop as he may choose. His ownership in fee is the highest estate known to the law, while an oil and gas lease ranks far below. We see no analogy here.

Appellants' first point alleging error of the trial court in rendering judgment for appellee, and the second point alleging error in not rendering judgment for appellants are overruled.

Appellants' third point is as follows:

"If appellee Minear were entitled to any judgment, he was not entitled to recover more than 'any mineral on said land', and the court erred in awarding him judgment for the title to and possession of all of the oil, gas and other minerals in and under and that may be produced from the lands involved herein."

The controversy involves a determination of the meaning of "any minerals on said land." We have not been cited to a case construing the exact language quoted and have found none. It is not disputed that a reservation was made in said deed, nor is it denied that there was a severance of such minerals as were reserved. The adjective "any" may have slightly different meanings depending on the context and appurtenant facts. But in 3 Words and Phrases, Perm. Ed., beginning on page

529, many cases are collated showing that in construing statutes and other instruments "any" is equivalent to and has force of "every" or "all." We shall not here attempt to cite said cases, but they seem conclusive. We think that as found by the learned trial court, "any minerals" as used in the deed in question, undoubtedly meant "all minerals." Neither can there be any doubt that the words, "any ·minerals on said land," included the oil and gas; that the term "minerals" includes oil and gas is so well settled as to need no citation of authorities; that "on said land" means in, under and that may be produced from said land is equally well settled. See Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217, and the numerous authorities therein cited. Appellants' third point is overruled.

■ Appellants' fourth point is as follows:

"If appellee Minear is entitled to recover, then the court erred in failing to recognize and preserve in the judgment the rights of appellants Branham and Lawrence to recover damages from appellee Minear for injuries to the surface of the land caused by drilling and mining operations."

We regard the assignment as without merit. Appellants admit that the surface estate would be subservient to the mineral estate. The owner of the mineral estate would have the right of ingress and egress to.develop same. But the rights of the surface owners are recognized by law, and if in such development operations, unnecessary or unjustified injury to the surface should result, appellants would have their recourse to the courts. · There was no pleading or prayer, and in so far as the record shows, no facts in evidence before the court and jury raising such issue. Even if it be insisted that the plea of not guilty would be sufficient, the court could not have anticipated the character and extent of any such damage. Such would have been in the nature of an anticipatory or declaratory judgment without pleadings or facts to support it. The point is overruled.

■ Since under the record shown,. no suit on behalf of the State to escheat the minerals here involved, Charles Wadsworth Murray and Sybl Louise Willoughby, alien owners thereof, were competent to convey the same in fee simple to Arch F. Allington, appellee's predecessor in title, who in turn conveyed the same to appellee. Therefore, the trial court did not err in holding that appellee was entitled to recover on the strength of his own title.

The judgment of the trial court is affirmed.

### On Rehearing.

Counsel for appellants have filed an interesting motion for rehearing herein, which has been given careful consideration. In addition to the four points assigned and briefed for reversal of the judgment of the trial court on original hearing of the appeal, appellants now assert that the case should be reversed because of an alleged outstanding title. In this case, the asserted outstanding title would necessarily be in the State of Texas.

■ We agree that ordinarily in a trespass to try title suit, proof of an outstanding title may defeat a recovery by the plaintiff, but the rule is subject to certain qualifications. (a) The asserted outstanding title must be proved to be a valid title. 41 Tex. Jur. 661, Sec. 156. In the case of Bridges v. Continental Southland Savings & Loan Ass'n, Tex.Civ.App., 86 S.W.2d 659, 661,. it is said:

"Where the defendant relies on an outstanding title in a third person in order to render the defense complete, the burden is. upon him to show that such title is a valid, one, and the mere fact that some kind of an outstanding title appears is not a good defense." Citing Houston Oil Co. of Texas v. Choate, Tex,Civ.App., 215 S.W. 118; Holland v. Ferris, Tex.Civ.App., 107 S.W. 102.

■ It is apparent that appellants' claim that an outstanding title to the mineral interest involved in the suit is based on an assumption that such mineral interest had ipso facto escheated to the State. We adhere to our former holding that, even though the facts existed which would have supported a judgment of forfeiture, yet a judicial proceeding in strict conformity to. the statute and a judgment of court estab-

lishing and declaring such forfeiture must have been had to vest title to said minerals in the State. No proof of such judicial proceeding and judgment was made. Should it be contended that the State had an inchoate or imperfect title, that would not suffice. It must be proved to be a valid title. Should it be further contended that by reason of failure to make the report required by Article 176, the State ipso facto acquired an equitable title to said minerals, that would still be of no avail to appellants. Capt et al. v. Stubbs et al., 68 Tex. 222, 4 S.W. 467; also Bridges v. Continental Southland Savings & Loan Ass'n, supra, where it is said:

"As stated, Bridges and wife had conveyed the land by regular title to the appellee, and, when a defendant has no title to the land in himself, he cannot defeat plaintiff's recovery by showing an outstanding equitable title."

Appellants wholly failed to prove title to said minerals in themselves. On the contrary, appellee proved an unbroken chain of title by deeds and probate proceedings from the sovereignty of the soil to himself, which the trial court found was effective to vest in appellee a good title thereto, and which finding we approve. By their contention that there was an outstanding title to said minerals in the State, appellants concede that they, themselves, have no title. From the Bridges case cited above, we further quote:

"Neither can the defendant avail himself of an outstanding equity with which he does not connect himself as against the legal title asserted by plaintiff.

"The rule is further established that a defendant cannot set up as a defense an equitable title in a third person who does not himself assert such equity. * * *" Citing Shields v. Hunt, 45 Tex. 424; Goode v. Jasper, 71 Tex. 48, 51, 9 S.W. 132.

The State has asserted no equity in said mineral interests.

(b) "In order to defeat recovery an outstanding title must appear to be superior to the title which is exhibited by the plaintiff. Styles v. Gray, 10 Tex. 503. 'The outstanding title, to be available as a defense, must be shown to be the superior

title. The mere fact that some kind of an outstanding title appears is not a good defense.'" Houston Oil Co. v. Choate, 215 S.W. 118, 123, affirmed Com.App., 232 S.W. 285. 41 Tex.Jur. 663, Sec. 158.

Plaintiff established in himself by mesne conveyances a fee simple title, which is the best title known to the law.

The motion for rehearing is overruled.