Reversed and Rendered and Opinion filed August 7, 2008








Reversed and
Rendered and Opinion filed
August 7, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00013-CV

____________

 

CLEAR LAKE CITY WATER AUTHORITY, Appellant

 

V.

 

KIRBY LAKE DEVELOPMENT, LTD., MITER
DEVELOPMENT COMPANY, L.L.C., AND TAYLOR LAKE, LTD., Appellees

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 2005-17524

 



 

O P I N I O N








Appellant, Clear Lake City Water Authority, appeals from a
grant of summary judgment favoring appellees, Kirby Lake Development, Ltd.,
Miter Development Company, L.L.C., and Taylor Lake, Ltd., on appellees= breach of
contract causes of action against the Water Authority.  Appellees, a group of
real estate developers, alleged that the Water Authority breached contractual
obligations to place a particular bond authorization measure on the ballot in
every bond election it held until the measure passed.  In its judgment, the
trial court found that the Water Authority breached the agreements and awarded
appellees damages totaling $1,307,956.  On appeal, the Water Authority argues
that (1) the trial court did not have subject matter jurisdiction because
governmental immunity from suit has not been waived, (2) the summary judgment
evidence demonstrates that the Water Authority did not breach the contracts,
(3) a fact issue exists regarding causation of damages, (4) the trial court
erred in not considering new evidence attached to the motion for new trial, (5)
the trial court miscalculated interest, and (6) the trial court=s writ of
execution violates public policy.  Finding that the Water Authority did not
breach the contracts, we reverse and render.

I.  Background

At the heart of this case are four contracts between the
Water Authority and appellees.  As part of constructing new residential
developments, appellees built water and sewer facilities.  Pursuant to the
contracts between itself and each of the appellees, the Water Authority agreed
to operate and maintain the facilities, at least initially on a rent-free
basis.  The Water Authority also agreed to purchase the facilities, subject to
certain conditions.  Among the conditions were the following:

The Authority intends to call a
bond election in the near future, but is not obligated to do so, and the
Authority cannot predict when, if ever, such an election and bond sale will
occur, or when, if ever the Authority will have other funds available and
allocated for the Purchase of the Facilities.  The Authority shall have the
right to purchase the Facilities with funds available from a source other than
a bond sale for such purpose, but shall have no obligation to do so.  The
Authority does agree, however, that it shall include in any bond election it
does hold subsequent to the effective date of this Agreement bond authorization
in an amount sufficient to pay the purchase price of the Facilities.[1]








After the contracts became effective, a bond authorization
measure sufficient to pay for the facilities in question was placed on the very
next bond election ballot, in May 1998, and yet again on the next ballot after
that, in October 1998.  The authorization was soundly defeated in both
elections.[2]

Appellees thereafter sued the Water Authority, alleging
that the Water Authority was obligated to purchase the facilities from general
revenues even though the bond measures had failed.  See Clear Lake Water
Auth. v. Kirby Lake Dev., Ltd., 123 S.W.3d 735, 741 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied) (Kirby Lake I).  At the conclusion of
trial, a jury found that the Water Authority had breached the contract by
failing to purchase the facilities.  Id.  In its judgment, the trial
court further declared that the Authority was obligated to purchase the
facilities by whatever means necessary.  Id. at 742.  When the Water
Authority appealed the judgment, this court reversed, holding that the Water
Authority was not required to purchase the facilities in the absence of voter
approval of the bond measure.  Id. at 744-45.  In other words, such
voter approval was a condition precedent on the Water Authority=s purchase
obligation.  Id. at 756.

In September 2004, the Water Authority again held a bond
election.  The Water Authority placed a measure on the ballot seeking authority
to issue $29.1 million in bonds; however, the measure did not include any
amount related to the facilities at issue here.  The September 2004 bond
measure passed handily.








Appellees then filed the present lawsuit, alleging that the
Water Authority breached the agreements by failing to include a bond
authorization sufficient to pay for the facilities on the September 2004
ballot.  Both sides filed motions for summary judgment.  In the first set of
cross-motions, the Water Authority argued, among other things, that as a matter
of law it satisfied its obligations under the agreements by submitting the bond
authorization to voters a single time.  In response, appellees urged the trial
court to hold that the Water Authority breached the agreements as a matter of
law by failing to place the authorization on a third consecutive ballot.  The
trial court denied the Water Authority=s initial motion
and granted a partial summary judgment favoring appellees on the issue of
liability.

In the second set of cross-motions, the Water Authority
asserted governmental immunity as a bar to the suit.  Appellees moved for
judgment on causation.  The trial court again denied the Water Authority=s motion and
granted a final judgment favoring appellees for $1,307,956.  Prior to the final
judgment being signed, the Water Authority called another election, which again
included a bond authorization measure for purchase of the facilities.  The
election was held on November 7, 2006, after the judgment was signed on
September 5, 2006, and the measure again failed.[3] 
The Water Authority attached the election results to its motion for rehearing. 
The trial court refused to consider any evidence relating to the November 2006
election and denied the motion for rehearing.

As stated above, on appeal, the Water Authority contends
that (1) the trial court lacked subject matter jurisdiction, (2) as a matter of
law, the Water Authority did not breach the agreements, (3) a fact issue exists
on causation, (4) the trial court erred in not considering the new evidence,
(5) the trial court miscalculated interest, and (6) the writ of execution
violates public policy.

II.  Jurisdiction








In its first issue, the Water Authority argues that the
trial court did not have subject matter jurisdiction because governmental
immunity from suit has not been waived.  However, in a practically identical
case (at least in regard to the jurisdictional issue), a separate panel of this
court has held that immunity from such suits has been waived under section
271.152 of the Local Government Code.  Tex. Loc. Gov=t Code ' 271.152; Clear
Lake City Water Auth. v. Friendswood Dev. Co., Ltd., No. 14-07-00096-CV,
2008 WL 2130435, at *12 (Tex. App.CHouston [14th
Dist.] May 22, 2008, no pet. h.).  For the reasons expressed in that opinion,
we overrule the Water Authority=s first issue and proceed to consider the
substantive issues.

III.  Breach

In its second issue, the Water Authority contends that the
trial court erred in holding that the Water Authority breached the agreements
as a matter of law and in refusing to hold that the Water Authority did not breach
the agreements as a matter of law.  More specifically, the Water Authority
argues that the agreements required it to place the bond authorization proposal
on an election ballot only one time, and not on every subsequent ballot until
the measure passed, as argued by appellees and found by the trial court.  It is
undisputed that the Water Authority placed a proposal on the first two election
ballots occurring after the agreements became effective but then failed to do
so in a third election.  Thus, the key question here is one of contract
interpretation.

A.  Standards of Review

We analyze the grant of a traditional motion for summary
judgment under well‑established standards of review.  See generally Tex.
R. Civ. P. 166a; Nixon v. Mr. Prop.  Mgmt. Co., Inc., 690 S.W.2d 546,
548‑49 (Tex. 1985).  The movant bears the burden to show that there is no
genuine issue of material fact and that it is entitled to judgment as a matter
of law.  Tex. R. Civ. P. 166a(c).  We review the motion and the evidence de
novo, taking as true all evidence favorable to the nonmovant, and indulging
every reasonable inference and resolving any doubts in the nonmovant=s favor.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Where, as here,
both sides filed motions seeking summary judgment on the same issue, and the
trial court granted one while denying the other, we review both sides= summary judgment
evidence, determine all questions presented, and, if the trial court erred,
render the judgment the trial court should have rendered.  Id.








In construing a contract, our primary concern is to
ascertain the parties= intent as expressed in the instrument.  Seagull
Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex.
2006)  To ascertain those intentions, we examine the entire contract in an
effort to harmonize and give effect to all of its provisions so that none will
be rendered meaningless.  Id.  No single provision should be given
controlling effect, but all provisions must be construed in reference to the
whole.  Id.  When a written contract is so worded that it can be given a
certain or definite legal meaning or interpretation, it is not ambiguous, and
the court construes it as a matter of law.  Am. Mfrs. Mut. Ins. Co. v.
Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).  A contract is ambiguous when
its meaning is uncertain and doubtful or is reasonably susceptible to more than
one interpretation.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996).

B.  Analysis

The agreements at issue here obligated the Water Authority
to place the bond authorization issue on Aany bond election
it [holds] subsequent to the effective date of [the] Agreement.@  Put quite
simply, the Water Authority interprets this sentence as requiring it to place
the measure on only the very next ballot, while appellees interpret it as
requiring the measure to be repeatedly placed on ballots until approved.








In support of their position, appellees cite a few cases in
which courts have interpreted phrases using the term Aany@ in a plural
sense, i.e., to mean Aevery,@ Aeach,@ or Aall.@  See Hime v. City of Galveston, 268 S.W.2d 543 (Tex. Civ. App.CWaco 1954, writ ref=d n.r.e.); Branham v. Minear,
199 S.W.2d 841 (Tex. Civ. App.CEastland 1947, writ ref=d n.r.e.); Doherty v. King,
183 S.W.2d 1004 (Tex. Civ. App.CAmarillo 1944, writ dism=d).  However, these and other
authorities generally recognize that depending on the context, Aany@ can also be used
in a singular sense, i.e., to mean Aone@ or even Athe next one.@[4]  The ultimate
question, therefore, is:  what does the phrase in question mean in the context
of the agreement at issue in this case?  The paragraph in which it occurs bears
repeating:

The Authority intends to call a
bond election in the near future, but is not obligated to do so, and the
Authority cannot predict when, if ever, such an election and bond sale will
occur, or when, if ever the Authority will have other funds available and
allocated for the Purchase of the Facilities.  The Authority shall have the
right to purchase the Facilities with funds available from a source other than
a bond sale for such purpose, but shall have no obligation to do so.  The
Authority does agree, however, that it shall include in any bond election it
does hold subsequent to the effective date of this Agreement bond authorization
in an amount sufficient to pay the purchase price of the Facilities.








Taken
in isolation, the sentence emphasized by appelleesCAThe Authority does
agree . . . that it shall include in any bond election it does hold subsequent
to the effective date of this Agreement . . .@Ccould reasonably
be interpreted either way, as requiring the issue to be on every bond
election ballot until it passes or just on the next such ballot.  However, the
balance of the paragraph clearly indicates that only one election was
contemplated.  See Seagull Energy, 207 S.W.3d at 345 (stating that no
single provision of a contract should be given controlling effect, but all
provisions must be construed in reference to the whole); see also Schriewer,
38 S.W.2d at 144-45.  The paragraph=s first sentence
states that the Water Authority Aintends to call a
bond election@ but it cannot predict when or if Asuch an
election . . . will occur.@  Unlike Aany,@ the words Aa@ and Aan@ are always
singular.  See The
American Heritage Dictionary 66, 105 (2d College ed. 1991).  Furthermore, use of the phrase Ain the near
future,@ additionally
indicates that a single election was intended.  If repeated ballot placement
was intended by the parties, a reference to a probable election Ain the near future@ would be out of
place.  In context, the sentence containing the phrase Aany bond election@ clearly refers to
the next election held after the effective date of the agreement.

It is also worth noting what the agreement does not say. 
Had the possibility of repeated ballot placement been contemplated, the parties
likely would have stated so in express terms.  The agreement uses the noun
phrase Aany bond election,@ which is
singular, rather than the phrase Aany bond elections,@ which is plural. 
See William A. Sabin, The Gregg
Reference Manual 238, 259 (9th ed. 2001).  The agreement also does not state
that a bond measure would be submitted to voters repeatedly until approved.  To
the contrary, the central point of the paragraph, as explained above, is that
the bond measure would be included on the very next bond proposal ballot.  We
therefore find the agreement to be unambiguous in obligating the Water
Authority to place the measure only on the next ballot after the effective date
of the agreement.

As mentioned above, it is undisputed, and has been
conclusively established, that the Water Authority placed a bond proposal
sufficient to pay for the facilities on the very next bond election ballot
after the agreement was signed.  Accordingly, we find that as a matter of law,
the Water Authority did not breach the agreement.  The trial court erred in
holding otherwise.  We thus sustain the Water Authority=s second issue.[5]








IV.  Remaining Issues

In four additional issues, the Water Authority contends
that (1) a fact issue exists on causation, (2) the trial court erred in not
considering new evidence attached to the motion for new trial, (3) the trial
court miscalculated interest, and (4) the trial court=s writ of
execution violates public policy.  Because we have resolved the Water Authority=s second issue in
its favor, we need not address the remaining issues.  Accordingly, issues three
through six are overruled.

V.  Disposition

The trial court erred in granting summary judgment favoring
appellees and in refusing to grant summary judgment favoring the Water
Authority.  We therefore reverse the trial court=s judgment and
render judgment that appellees take nothing on their breach of contract causes
of action against the Water Authority.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed August 7, 2008.

Panel consists of
Chief Justice Hedges, Justice Boyce, and Senior Justice Hudson.[6]









[1]  Three of the agreements between the Water Authority
and appellees contained this language in italics and bold faced type.  The
fourth agreement, the 1994 agreement between the Water Authority and Taylor
Lake, Ltd., contained the language in a regular font.  This particular
agreement also contained the phrase Ain
March or May 1994,@ dealing with the intention to call a bond election,
instead of the phrase Ain the near future.@





[2]  In the May 1998 election, a single bond proposal was
placed on the ballot covering both amounts for Water Authority infrastructure
improvements and maintenance and amounts for purchasing facilities from
developers.  In the October 1998 election, the ballot contained separate
proposals for Water Authority projects and purchases from developers.





[3]  The trial court signed an Amended Final Judgment
Nunc Pro Tunc on January 29, 2007, because  the original judgment provided an
incorrect year of signing.





[4]  In Hime, the court interpreted a statutory
phrase containing the term Aany@ to mean Aevery@ or Aall@ in light of the general intent of the statute and the
rule of statutory construction requiring a liberal construction to promote
justice.  268 S.W.2d at 545.  The court in Branham acknowledged that Aany@ may have
different meanings in different contexts but then rather summarily found that
the statute at issue used the term as synonymous with Aevery.@  199 S.W.2d at
845-46.  In Doherty, the court acknowledged that Aany@ was derived
from Aone@ and may in
certain contexts be synonymous with Aa@ or Aan@; however, after examining the context of the statute
in which it was used, the court determined that its plural meaning was
intended.  183 S.W.2d at 1007.  Additionally, in Texas Co. v. Schriewer,
the court examined the context and intent of a statute in determining that Aany@ was used in
the statute to mean Aone.@  38 S.W.2d
141, 144-45 (Tex. Civ. App.CWaco 1931), aff=d in part, rev=d in part sub nom. Smith v. Tex. Co., 53 S.W.2d 774 (Tex. Comm=n App. 1932).

The term Aany@ is an indefinite pronoun that can be singular or
plural depending on the context in which it is used.  See William A.
Sabin, The Gregg Reference Manual 238, 259 (9th ed. 2001); see also
Webster=s Third New International Dictionary 97 (1993); Black=s Law Dictionary 86 (5th ed. 1979).  The term itself is singular as used in the quoted
sentence because the noun that it modifies, Abond
election,@ is singular.  See Sabin, supra, at 238,
259   However, this is not necessarily determinative of the issue before us.





[5]  The developers also contend that interpreting the
agreement as requiring a single vote runs counter to the opinion in Kirby
Lake I, wherein it was suggested that the Water Authority was not excused
from performance under the agreements when voters failed to approve a bond
measure Ain a particular election.@  123 S.W.3d at 745.  However, the point of the
discussion in the cited portion of Kirby Lake I was that voter approval
was a condition precedent to the Water Authority=s obligation to purchase the facilities.  Id.  The issue of
whether the Water Authority was obligated to place the bond measure in every
election until it passed was not directly before us in Kirby Lake I;
therefore, the suggestion referenced by appellees is not controlling of the
issue.





[6]  Senior Justice J. Harvey Hudson sitting by
assignment.