**CLEAR LAKE CITY WATER AUTHORITY, Appellant,**

v.

**KIRBY LAKE DEVELOPMENT, LTD.,** Miter Development Company, L.L.C., and Taylor Lake, Ltd., Appellees.

No. 14–08–00013–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 7, 2008.

Rehearing Overruled Oct. 23, 2008.

Barry Abrams, Ramon G. Viada III, Abrams Scott & Bickley, L.L.P., Houston, TX, for Appellant.

Karen B. Jewell, Lawrence J. Fossi, Fossi & Jewel LLP, Houston, TX, for Appellees.

Panel consists of Chief Justice HEDGES, Justice BOYCE, and Senior Justice HUDSON.*

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Clear Lake City Water Authority, appeals from a grant of summary judgment favoring appellees, Kirby Lake Development, Ltd., Miter Development Company, L.L.C., and Taylor Lake, Ltd., on appellees' breach of contract causes of action against the Water Authority. Appellees, a group of real estate developers, alleged that the Water Authority breached contractual obligations to place a particular bond authorization measure on the ballot in every bond election it held until the measure passed. In its judgment, the trial court found that the Water Authority breached the agreements and awarded appellees damages totaling $1,307,956. On appeal, the Water Authority argues that (1) the trial court did not have subject matter jurisdiction because governmental immunity from suit has not been waived, (2) the summary judgment evidence demonstrates that the Water Authority did not breach the contracts, (3) a fact issue exists regarding causation of damages, (4) the trial court erred in not considering new evidence attached to the motion for new trial, (5) the trial court miscalculated inter-est, and (6) the trial court's writ of execution violates public policy. Finding that the Water Authority did not breach the contracts, we reverse and render.

## I. Background

At the heart of this case are four contracts between the Water Authority and appellees. As part of constructing new residential developments, appellees built water and sewer facilities. Pursuant to the contracts between itself and each of the appellees, the Water Authority agreed to operate and maintain the facilities, at least initially on a rent-free basis. The Water Authority also agreed to purchase the facilities, subject to certain conditions. Among the conditions were the following:

> The Authority intends to call a bond election in the near future, but is not obligated to do so, and the Authority cannot predict when, if ever, such an election and bond sale will occur, or when, if ever the Authority will have other funds available and allocated for the Purchase of the Facilities. The Authority shall have the right to purchase the Facilities with funds available from a source other than a bond sale for such purpose, but shall have no obligation to do so. The Authority does agree, however, that it shall include in any bond election it does hold subsequent to the effective date of this Agreement bond authorization in an amount sufficient to pay the purchase price of the Facilities.[1]

After the contracts became effective, a bond authorization measure sufficient to

---

* Senior Justice J. Harvey Hudson sitting by assignment.

1. Three of the agreements between the Water Authority and appellees contained this language in italics and bold faced type. The fourth agreement, the 1994 agreement be-tween the Water Authority and Taylor Lake, Ltd., contained the language in a regular font. This particular agreement also contained the phrase "in March or May 1994," dealing with the intention to call a bond election, instead of the phrase "in the near future."

pay for the facilities in question was placed on the very next bond election ballot, in May 1998, and yet again on the next ballot after that, in October 1998. The authorization was soundly defeated in both elections.[2]

Appellees thereafter sued the Water Authority, alleging that the Water Authority was obligated to purchase the facilities from general revenues even though the bond measures had failed. *See Clear Lake Water Auth. v. Kirby Lake Dev., Ltd.*, 123 S.W.3d 735, 741 (Tex.App.–Houston [14th Dist.] 2003, pet. denied) (*Kirby Lake I* ). At the conclusion of trial, a jury found that the Water Authority had breached the contract by failing to purchase the facilities. *Id.* In its judgment, the trial court further declared that the Authority was obligated to purchase the facilities by whatever means necessary. *Id.* at 742. When the Water Authority appealed the judgment, this court reversed, holding that the Water Authority was not required to purchase the facilities in the absence of voter approval of the bond measure. *Id.* at 744–45. In other words, such voter approval was a condition precedent on the Water Authority's purchase obligation. *Id.* at 756.

In September 2004, the Water Authority again held a bond election. The Water Authority placed a measure on the ballot seeking authority to issue $29.1 million in bonds; however, the measure did not include any amount related to the facilities at issue here. The September 2004 bond measure passed handily.

Appellees then filed the present lawsuit, alleging that the Water Authority breached the agreements by failing to include a bond authorization sufficient to pay for the facilities on the September 2004 ballot. Both sides filed motions for summary judgment. In the first set of cross-motions, the Water Authority argued, among other things, that as a matter of law it satisfied its obligations under the agreements by submitting the bond authorization to voters a single time. In response, appellees urged the trial court to hold that the Water Authority breached the agreements as a matter of law by failing to place the authorization on a third consecutive ballot. The trial court denied the Water Authority's initial motion and granted a partial summary judgment favoring appellees on the issue of liability.

In the second set of cross-motions, the Water Authority asserted governmental immunity as a bar to the suit. Appellees moved for judgment on causation. The trial court again denied the Water Authority's motion and granted a final judgment favoring appellees for $1,307,956. Prior to the final judgment being signed, the Water Authority called another election, which again included a bond authorization measure for purchase of the facilities. The election was held on November 7, 2006, after the judgment was signed on September 5, 2006, and the measure again failed.[3] The Water Authority attached the election results to its motion for rehearing. The trial court refused to consider any evidence relating to the November 2006 election and denied the motion for rehearing.

---

2. In the May 1998 election, a single bond proposal was placed on the ballot covering both amounts for Water Authority infrastructure improvements and maintenance and amounts for purchasing facilities from developers. In the October 1998 election, the ballot contained separate proposals for Water Authority projects and purchases from developers.

3. The trial court signed an Amended Final Judgment Nunc Pro Tunc on January 29, 2007, because the original judgment provided an incorrect year of signing.

As stated above, on appeal, the Water Authority contends that (1) the trial court lacked subject matter jurisdiction, (2) as a matter of law, the Water Authority did not breach the agreements, (3) a fact issue exists on causation, (4) the trial court erred in not considering the new evidence, (5) the trial court miscalculated interest, and (6) the writ of execution violates public policy.

## II.  Jurisdiction

■ In its first issue, the Water Authority argues that the trial court did not have subject matter jurisdiction because governmental immunity from suit has not been waived.  However, in a practically identical case (at least in regard to the jurisdictional issue), a separate panel of this court has held that immunity from such suits has been waived under section 271.152 of the Local Government Code. Tex. Loc. Gov't Code § 271.152; *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, No. 14–07–00096–CV, 2008 WL 2130435, at *12 (Tex.App.–Houston [14th Dist.] May 22, 2008, no pet. h.).  For the reasons expressed in that opinion, we overrule the Water Authority's first issue and proceed to consider the substantive issues.

## III.  Breach

In its second issue, the Water Authority contends that the trial court erred in holding that the Water Authority breached the agreements as a matter of law and in refusing to hold that the Water Authority did not breach the agreements as a matter of law.  More specifically, the Water Authority argues that the agreements required it to place the bond authorization proposal on an election ballot only one time, and not on every subsequent ballot until the measure passed, as argued by appellees and found by the trial court.  It

is undisputed that the Water Authority placed a proposal on the first two election ballots occurring after the agreements became effective but then failed to do so in a third election.  Thus, the key question here is one of contract interpretation.

### A.  Standards of Review

We analyze the grant of a traditional motion for summary judgment under well-established standards of review.  *See generally* Tex.R. Civ. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).  The movant bears the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Tex.R. Civ. P. 166a(c).  We review the motion and the evidence de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).  Where, as here, both sides filed motions seeking summary judgment on the same issue, and the trial court granted one while denying the other, we review both sides' summary judgment evidence, determine all questions presented, and, if the trial court erred, render the judgment the trial court should have rendered.  *Id.*

In construing a contract, our primary concern is to ascertain the parties' intent as expressed in the instrument.  *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006)  To ascertain those intentions, we examine the entire contract in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless.  *Id.* No single provision should be given controlling effect, but all provisions must be construed in reference to the whole.  *Id.* When a written contract is so worded that it can be given a certain or definite legal

meaning or interpretation, it is not ambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

### B. Analysis

■ The agreements at issue here obligated the Water Authority to place the bond authorization issue on "any bond election it [holds] subsequent to the effective date of [the] Agreement." Put quite simply, the Water Authority interprets this sentence as requiring it to place the measure on only the very next ballot, while appellees interpret it as requiring the measure to be repeatedly placed on ballots until approved.

■ In support of their position, appellees cite a few cases in which courts have interpreted phrases using the term "any" in a plural sense, *i.e.*, to mean "every," "each," or "all." *See Hime v. City of Galveston*, 268 S.W.2d 543 (Tex.Civ.App.-Waco 1954, writ ref'd n.r.e.); *Branham v. Minear*, 199 S.W.2d 841 (Tex.Civ.App.–

Eastland 1947, writ ref'd n.r.e.); *Doherty v. King*, 183 S.W.2d 1004 (Tex.Civ.App.–Amarillo 1944, writ dism'd). However, these and other authorities generally recognize that depending on the context, "any" can also be used in a singular sense, *i.e.*, to mean "one" or even "the next one." [4] The ultimate question, therefore, is: what does the phrase in question mean in the context of the agreement at issue in this case? The paragraph in which it occurs bears repeating:

> The Authority intends to call a bond election in the near future, but is not obligated to do so, and the Authority cannot predict when, if ever, such an election and bond sale will occur, or when, if ever the Authority will have other funds available and allocated for the Purchase of the Facilities. The Authority shall have the right to purchase the Facilities with funds available from a source other than a bond sale for such purpose, but shall have no obligation to do so. The Authority does agree, however, that it shall include in any bond election it does hold subsequent to the effective date of this Agreement bond authorization in an amount sufficient to pay the purchase price of the Facilities.

4. In *Hime*, the court interpreted a statutory phrase containing the term "any" to mean "every" or "all" in light of the general intent of the statute and the rule of statutory construction requiring a liberal construction to promote justice. 268 S.W.2d at 545. The court in *Branham* acknowledged that "any" may have different meanings in different contexts but then rather summarily found that the statute at issue used the term as synonymous with "every." 199 S.W.2d at 845–46. In *Doherty*, the court acknowledged that "any" was derived from "one" and may in certain contexts be synonymous with "a" or "an"; however, after examining the context of the statute in which it was used, the court determined that its plural meaning was intended. 183 S.W.2d at 1007. Additionally, in *Texas Co. v. Schriewer*, the court examined the context and intent of a statute in determining that "any" was used in the statute to mean "one." 38 S.W.2d 141, 144–45 (Tex.Civ.App.–Waco 1931), *aff'd in part, rev'd in part sub nom. Smith v. Tex. Co.*, 53 S.W.2d 774 (Tex.Com.App.1932).

The term "any" is an indefinite pronoun that can be singular or plural depending on the context in which it is used. *See* William A. Sabin, *The Gregg Reference Manual* 238, 259 (9th ed.2001); *see also Webster's Third New International Dictionary* 97 (1993); *Black's Law Dictionary* 86 (5th ed.1979). The term itself is singular as used in the quoted sentence because the noun that it modifies, "bond election," is singular. *See* Sabin, *supra*, at 238, 259 However, this is not necessarily determinative of the issue before us.

Taken in isolation, the sentence emphasized by appellees—"The Authority does agree ... that it shall include in any bond election it does hold subsequent to the effective date of this Agreement ..."—could reasonably be interpreted either way, as requiring the issue to be on *every* bond election ballot until it passes or just on the next such ballot. However, the balance of the paragraph clearly indicates that only one election was contemplated. *See Seagull Energy*, 207 S.W.3d at 345 (stating that no single provision of a contract should be given controlling effect, but all provisions must be construed in reference to the whole); *see also Schriewer*, 38 S.W.2d at 144–45. The paragraph's first sentence states that the Water Authority "intends to call *a* bond election" but it cannot predict when or if "such *an* election ... will occur." Unlike "any," the words "a" and "an" are always singular. *See The American Heritage Dictionary* 66, 105 (2d College ed.1991). Furthermore, use of the phrase "in the near future," additionally indicates that a single election was intended. If repeated ballot placement was intended by the parties, a reference to *a* probable election "in the near future" would be out of place. In context, the sentence containing the phrase "any bond election" clearly refers to the next election held after the effective date of the agreement.

It is also worth noting what the agreement does not say. Had the possibility of repeated ballot placement been contemplated, the parties likely would have stated so in express terms. The agreement uses

the noun phrase "any bond election," which is singular, rather than the phrase "any bond elections," which is plural. *See* William A. Sabin, *The Gregg Reference Manual* 238, 259 (9th ed.2001). The agreement also does not state that a bond measure would be submitted to voters repeatedly until approved. To the contrary, the central point of the paragraph, as explained above, is that the bond measure would be included on the very next bond proposal ballot. We therefore find the agreement to be unambiguous in obligating the Water Authority to place the measure only on the next ballot after the effective date of the agreement.

As mentioned above, it is undisputed, and has been conclusively established, that the Water Authority placed a bond proposal sufficient to pay for the facilities on the very next bond election ballot after the agreement was signed. Accordingly, we find that as a matter of law, the Water Authority did not breach the agreement. The trial court erred in holding otherwise. We thus sustain the Water Authority's second issue.[5]

## IV. Remaining Issues

In four additional issues, the Water Authority contends that (1) a fact issue exists on causation, (2) the trial court erred in not considering new evidence attached to the motion for new trial, (3) the trial court miscalculated interest, and (4) the trial court's writ of execution violates public policy. Because we have resolved the Wa-

---

5. The developers also contend that interpreting the agreement as requiring a single vote runs counter to the opinion in *Kirby Lake I,* wherein it was suggested that the Water Authority was not excused from performance under the agreements when voters failed to approve a bond measure "in a particular election." 123 S.W.3d at 745. However, the point of the discussion in the cited portion of

*Kirby Lake I* was that voter approval was a condition precedent to the Water Authority's obligation to purchase the facilities. *Id.* The issue of whether the Water Authority was obligated to place the bond measure in every election until it passed was not directly before us in *Kirby Lake I;* therefore, the suggestion referenced by appellees is not controlling of the issue.

ter Authority's second issue in its favor, we need not address the remaining issues. Accordingly, issues three through six are overruled.

## V. Disposition

The trial court erred in granting summary judgment favoring appellees and in refusing to grant summary judgment favoring the Water Authority. We therefore reverse the trial court's judgment and render judgment that appellees take nothing on their breach of contract causes of action against the Water Authority.